G. W. Schaefer, v. The Home Insurance Company—194 S. W. (2d) 718.

Kansas City Court of Appeals. April 1, 1946.

*John T. Harding, David A. Murphy, R. Carter Tucker, John Murphy, Robert L. Spurrier, Harding, Murphy & Tucker* for appellant.

*Carl H. Willbrand, E. A. Taylor,* for respondent.

BOYER, C.,—Respondent, plaintiff below, sought recovery under a marine insurance policy issued by the appellant, hereafter referred to as defendant. The petition states the corporate existence of defendant and that it was engaged in the business of writing property insurance in the State of Missouri; that the defendant did on the 15th day of June, 1943, for a consideration, issue and deliver to plaintiff its policy of insurance in the sum of $600 on plaintiff's Century Runabout boat as described in the policy. The policy is referred to and set out in full in the petition. Plaintiff further states that his said boat so insured by the defendant "was lost some time during the first week in November, 1943, the exact time and nature of said loss being unknown to plaintiff, but that plaintiff last saw said boat at Lake Lotawana in Jackson County, Missouri, on or about the 4th day of November, 1943, at which time and place, plaintiff left said boat tied up at the dock with instructions to have said boat put up for the winter; that when plaintiff thereafter and on or about the 6th day of November, 1943, returned to Lake Lotawana to see if said boat had been put up in accordance with his instructions said boat had disappeared, and was missing and could not be found." It was further stated that plaintiff reported the loss of the boat to the office of the sheriff of Jackson County and to the agent of the defendant, and thereafter delivered to said agent proof of loss in the form and manner prescribed and approved by said agent; that plaintiff demanded payment of his claim under the policy in the sum of $600 for the total loss of his boat; that the demand for payment was refused, and that repeated demands met a like refusal. The petition further alleged vexatious refusal to pay on the part of the Company, and demanded payment for the face of the policy with interest, and for damages and attorneys' fees.

The answer of defendant admits its corporate capacity and that it is engaged in the business of writing property insurance in Missouri and elsewhere; and admits that on the 15th day of June, 1943, it issued the policy of marine insurance described and set out in plaintiff's petition, but denies each and every other allegation in the petition contained. For further answer defendant stated that it insured plaintiff from noon of the 15th day of June, 1943, until noon of the 15th day of June 1944; that according to the terms of the policy the boat was

insured "In Port and at Sea, in docks and graving docks, and on ways, gridirons and pontoons, at all times and in all places and on all occasions" not conflicting with other clauses of the policy; that the policy further provided that plaintiff warranted that the yacht would be laid up and out of commission on shore in permanent winter quarters from noon of November 1st to noon of April 15th, said provision being as follows: "Warranted by the insured that the within named yacht shall be laid up and out of commission on shore in permanent winter quarters from noon of November 1st to noon of April 15th"; that plaintiff breached said warranty in that said boat was not laid up out of commission on shore and in permanent winter quarters from November 1, 1943, to April 15, 1944, but was never laid up out of commission on shore in permanent winter quarters, and that by virtue of said breach of said warranty, defendant was not liable to plaintiff under said policy. The answer also further stated that the loss of the boat in question was due either to the negligence or the intentional act of the plaintiff in that he left the boat in the water with the automatic bailer in the bottom of the boat detached, which caused the boat to fill with water and sink.

The amended reply of the plaintiff states that he admits the corporate existence of defendant and the issuance of the policy of insurance in said answer mentioned, but denies each and every other allegation. Plaintiff further denies the making of any warranty in said policy of insurance or the existence of any warranty constituting a defense to plaintiff's action; denies that the loss was caused by plaintiff's negligence or by any act of plaintiff; and plaintiff further states that if there was a violation of any warranty, which he denies, any such warranty was in no event a material warranty, and that the defendant by its acts and conduct waived any such warranty and condition in said policy by failing to return or offer to return the premium paid by plaintiff to defendant for said policy.

The case was tried before the court and a jury. At the close of plaintiff's case and at the close of all the evidence the defendant moved the court for a directed verdict in its favor on the grounds that the petition did not state facts sufficient to constitue any claim against the defendant and that under all the evidence plaintiff failed to prove facts sufficient to constitute a claim against defendant. Such motions were overruled. The case was submitted to the jury upon instructions, and a verdict signed by ten jurors was for plaintiff authorizing recovery in the sum of $600 and interest.

Judgment followed accordingly, and defendant duly filed a motion to set aside the verdict and the judgment and for judgment in accordance with its motion for a directed verdict, and in the alternative for a new trial. Such motion was overruled and defendant has duly perfected its appeal from said judgment, and as ground for reversal presents these points: (a) Plaintiff's petition failed to state facts

sufficient to constitute a claim against the defendant. (b) All the evidence disclosed that plaintiff failed to establish or prove facts sufficient to constitute a claim against defendant.

A copy of the policy was offered in evidence by the plaintiff. It contains provisions as alleged in defendant's answer and shows that plaintiff's 1939, 16' century Runabout, called a yacht, was insured in the sum of $600, from noon of the 15th day of June, 1943, until noon of the 15th day of June, 1944, ''In Port and at Sea, in docks and graving docks, . . . at all times and in all places and on all occasions not conflicting with warranties and clauses given below, upon the hull, spars, . . .'' It was warranted by the insured that the yacht be confined to the use and navigation of Lake Lotawana. It was also provided that ''any deviation beyond the limits named herein shall render this policy void only during the time the yacht is outside the said limits, and upon the safe return of the yacht within said limits, in sound condition, the policy shall re-attach in full force and effect.''

In addition to the statement of facts in the petition, plaintiff furnished proof of loss and testified during the trial, showing that he operated the boat on Lake Lotawana on November 4, 1943, and left it on the lake tied up at the dock of one Petchell. Plaintiff said he left the boat there with the intention of having it stored for the winter and requested a watchman who was in attendance to advise Mr. Petchell to pull the boat as soon as possible. Plaintiff further testified that he returned to the lake on November 6, 1943, to ascertain whether the boat had been laid up, and at that time he could not find it at the place he had tied it to Petchell's dock. It further appears from plaintiff's testimony that on November 4, 1943, and for some time prior thereto, he had his boat moored near Doyle's dock on the lake, and when he went to get it on November 4, there were ten inches of water in the boat. The water was pumped out and plaintiff then drove the boat around the lake for some period of time; that during that time, ''the boat seemed to go different;'' that he did not know whether it was due to the distributor or the water in the boat. When plaintiff returned to the lake on November 6, a companion was with him who was there on November 4, and this man testified that there was ''awful high water'' at that time and that if the boat had been sunk it could not be seen then.

On behalf of defendant, it was shown that the keeper of the Doyle dock had requested plaintiff to remove his boat from that place as he did not desire to have it there on account of the congestion of other boats It was further shown that the caretaker whom plaintiff saw at the Petchell dock on November 4 had informed plaintiff that he would have to take his boat out of the lake because he was not a lot owner, and that plaintiff did not tell him to advise Petchell to pull the boat. This witness further testified that he was back at the Petchell dock

the next morning and plaintiff's boat was not in sight. Plaintiff later stated to the agent of the defendant with whom he was seeking adjustment of the loss that no trace of the boat had been found to the date of November 29, 1943.

The Company had denied liability for the loss in question and counsel for defendant later wrote plaintiff to that effect and advised him that the denial of liability was based upon the ground, among others, "that the alleged loss was not due to any of the perils insured against," and that the warranties in the policy had been breached by him. Plaintiff was also informed by this same letter that on April 23, the boat had been located and raised; that it was then tied to the dock at Petchell's on the lake and was being held subject to his order and at his risk. The Adjustment Company in charge of the claim for defendant employed Mr. Petchell and another to raise the boat; it was found on the bottom of the lake near Petchell's dock and in approximately ten feet of water. Defendant produced evidence tending to show that when the boat was raised, it was found that the automatic bailer located in the bottom of the boat had been detached and was lying on the bottom of the boat, which left an open hole for the admission of water sufficient to sink the boat. Plaintiff did not take charge of the boat and the record does not disclose what disposition was made of it. It was stipulated by the parties that no part of the premium paid by the plaintiff for the policy was ever tendered or returned by defendant to the plaintiff.

There was other testimony, but we deem the foregoing a sufficient statement upon which to dispose of the questions raised on appeal.

In view of the nature of the policy, the pleadings, the admitted facts, and uncontroverted testimony shown by the record in this case, it is our opinion that defendant's motion for a directed verdict should have been sustained for the following reasons: The policy in question is broad and comprehensive and for a definite term. It afforded coverage *"at all times and in all places and on all occasions not conflicting with warranties and clauses given below."* Clearly, a loss occurring at a time and place and under circumstances which were in conflict with any warranty made would not be within the terms of the policy. There is no possible question but that the plaintiff made the lay up warranty contained in the policy which is shown by the petition and by the admissions made in the case. There is no possible room for construction of the lay up warranty or to give it any meaning other than that evidenced by its plain and unambiguous terms. By this express warranty and agreement the boat was required to be laid up out of commission on shore in permanent winter quarters from noon of November 1st to noon of April 15th. Plaintiff did not comply with this condition but left his boat in the water after November 1st, subject to the hazards that might be met there. The meaning of the policy is not in doubt. Plaintiff was afforded coverage of a wide nature

from the date of the policy to November 1; then a limited coverage from November 1 to April 15, if the yacht was laid up on shore; and if replaced in the water after April 15, the same wide coverage would re-attach until the expiration of the policy on June 15.

We are of opinion and hold that plaintiff's breach of the warranty above described resulted in a suspension of the insurance on the boat at the time the loss is shown to have occurred. The breach of a promissory warranty or condition subsequent contained in a policy of insurance such as that before us operates to suspend the coverage of the policy during the existence of the breach. This rule is recognized by our state and federal courts as shown by the following cases: [Perkins v. Becker, 236 Mo. App. 786, 157 S. W. (2d) 550, 553; Bridgewater v. General Exchange Insurance Corp., 234 Mo. App. 335, 131 S. W. (2d) 220; Meyer Dairy Equipment Co. v. Connecticut Fire Insurance Co., 287 S. W. 663; Robinson v. Home Insurance Co., 73 F. (2d) 3 (C. C. A. 5th Circuit); Henjes v. Aetna Insurance Co., 132 F. (2d) 715 (C. C. A. 2d Circuit); Hastorf v. Greenwich Insurance Co. 132 Fed. 122; Canton Insurance Office Ltd. v. Independent Transportation Co., 217 Fed. 213 (C. C. A. 9th Circuit)].

Plaintiff insists that the case was tried by defendant upon the theory that there was a forfeiture of the policy and that the defendant is now changing theories in claiming there was merely a suspension and that under such situation the return of the premium was not required. The record does not support plaintiff. We find nothing in defendant's answer, its denial of liability, its motions for a directed verdict, or in the instructions requested of the court indicating in any manner that the defendant was relying upon the theory of a forfeiture of the policy instead of a suspension. Under the circumstances shown in this case, we are of opinion and hold that the defendant was not required to tender or return the premium paid for the policy in order to make the defense presented in the case. That such return or tender of premium is not required in a case of suspended insurance is ruled by the Bridgewater and Meyer Dairy Equipment Company cases cited above, and in Doerr v. National Fire Insurance Co., 315 Mo. 266, 285 S. W. 961.

Plaintiff admits that the boat was not laid up as provided in the warranty, but denies that this constituted a breach of any warranty contained in the policy of insurance, and asserts here "that any such warranty, if any, was in no event a material warranty," and in this connection claims the benefit of Sec. 5935, Revised Statutes of Missouri 1939, to the effect that a warranty which shall not materially affect the risk insured against shall be deemed as a representation only. We do not believe that the section referred to has any application to the questions before this court, and that if it did, it could not benefit plaintiff in this case. There is no possible merit in the claim that there was no breach of warranty of the policy in this case, and the claim that

the warranty was not material is equally without merit. That which is obvious needs no demonstartion, but if one should be desired all that is necessary is to say that if the boat had been laid up as plaintiff agreed to do on November 1, it would not have sunk in the lake on the 5th or 6th of November.

In view of the showing made by the record in this case and in reliance upon the authorities heretofore cited, we conclude that the trial court erred in refusing to sustain the motion for a directed verdict and that the judgment in this case should be reversed. The Commissioner so recommends. *Sperry, C.*, concurs.

PER CURIAM:—The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment is reversed. *Cave, J.*, and *Dew J.*, concur. *Bland, P. J.*, concurs in result.

APPEAL FROM JACKSON CIRCUIT COURT CONCURRING OPINION.

I concur in the result because I am of the opinion that the insurance was suspended at the time of the loss. However, I am of the opinion that the warranty was made to protect the defendant against loss by reason of the elements which create conditions more hazardous in winter than in summer, and that the boat was not sunk by reason of the action of the elements. Therefore, it cannot be said that the breach of the warranty caused the loss, and I do not agree with that part of the majority opinion holding that it was a material warranty within the meaning of Section 5935, Revised Statutes of Missouri 1939.