17672

Paul TSALAPATAS, Respondent, v. PHOENIX INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Appellant

(115 S. E. (2d) 49)

*Messrs. Edens & Woodward,* of Columbia, *for Appellant,*

*Messrs. McCants & Drawdy,* of Columbia, *for Respondent,*

June 20, 1960.

TAYLOR, Justice.

Plaintiff brought this action in the County Court for Richland County seeking damages in the sum of $640.00 sustained to his boat when it struck an object or objects beneath the surface of Lake Murray while the boat was being moved under its own power from the dock at Ballentine's Landing where it had undergone certain repairs. Defendant denied liability therefor on the ground that the policy of insurance issued upon the boat provided among other things that the boat in question was warranted "laid up and out of commission from October at noon, until April at noon" and that defendant was not liable for damages sustained by reason of its operation on January 28, 1958.

At the conclusion of plaintiff's evidence, defendant moved for a nonsuit which was refused. Defendant thereupon offered no evidence and both plaintiff and defendant moved for a directed verdict. The Court thereupon took the case away from the jury and the matter under advisement. Thereafter, Order was duly entered for judgment in favor of plaintiff in the sum of the amount sought.

There is practically no dispute concerning the facts. On May 15, 1957, defendant issued to plaintiff its policy of "Hull and Collision" insurance covering the boat in question for a period of one year from date. Upon the face of the policy appears the following warranty: "Lay-up Warranty— Warranted by the Assured that the within named Yacht shall be laid up and out of commission from Oct. at noon, until April at noon." The following September plaintiff stored the insured craft in a boathouse at Ballentine's Landing, said boathouse being a tin building on floats. He removed therefrom the cushions and other movable equipment, drained the fuel from the tank, except possibly a small amount, covered it with canvas and tied it up "good and proper." This is referred to as "wet storage" in that the boat was not moved from the water and stored in "dry storage."

On January 25, 1958, plaintiff took the boat from the boathouse to the dock at Ballentine's Landing, approximately 300 yards distance, had the boat pulled out of the water, inspected and repaired, did some painting and caulking. On January 28, 1958, the boat was placed back into the water and while proceeding under its own power to the place where it had previously been stored and laid up, it struck an underwater object and sank.

The sole question is whether the insured boat is to be considered as being laid up and out of commission at the time the damage was sustained. We have not found any previous decisions in this State upon this question and none have been cited. We have, therefore, considered the reasoning of other Courts under similar questions.

In *Schaefer v. Home Ins. Co.*, 239 Mo. App. 586, 194 S. W. (2d) 718, 719, the warranty appeared in the policy as follows: "Warranted by the insured that the within named yacht shall be laid up and out of commission on shore in permanent winter quarters from noon of November 1st to noon of April 15th." The boat was left tied to the dock with

instructions that it be put up for the winter. Subsequently investigation was made for the purpose of ascertaining whether the given instructions had been complied with and found that the boat had disappeared. Defendant took the position that it was not liable in that the provisions of the warranty had been breached. The Missouri Court said:

"In view of the nature of the policy, the pleadings, the admitted facts, and uncontroverted testimony shown by the record in this case, it is our opinion that the defendant's motion for directed verdict should have been sustained for the following reasons: The policy in question is broad and comprehensive and for a definite term. It afforded coverage 'at all times and in all places and on all occasions not conflicting with warranties and clauses given below.' Clearly, a loss occurring at a time and place and under circumstances which were in conflict with any warranty made would not be within the terms of the policy. There is no possible question but that the plaintiff made the lay up warranty contained in the policy which is shown by the petition and by the admissions made in the case. There is no possible room for construction of the lay up warranty or to give it any meaning other than that evidenced by its plain and unambiguous terms. By this express warranty and agreement the boat was required to be laid up out of commission on shore in permanent winter quarters from noon of November 1st to noon of April 15th. Plaintiff did not comply with this condition but left his boat in the water after November 1st, subject to the hazards that might be met there. The meaning of the policy is not in doubt. Plaintiff was afforded coverage of a wide nature from the date of the policy to November 1; then a limited coverage from November 1 to April 15, if the yacht was laid up and on shore; and if replaced in the water after April 15, the same wide coverage would re-attach until the expiration of the policy on June 15.

"We are of the opinion and hold that plaintiff's breach of the warranty above described resulted in a suspension of the insurance on the boat at the time the loss is shown to

have occurred. The breach of a promissory warranty or conditions subsequent contained in a policy of insurance such as that before us operates to suspend the coverage of the policy during the existence of the breach. * * *"

In *Gelb v. Automobile Ins. Co. of Hartford, Conn.*, 2 Cir., 168 F. (2d) 774, 775, the warranty provision was: "Warranted that the said yacht shall be laid up and out of commission from November 1st, at noon, until May 1st, at noon." This is identical with the warranty under consideration in instant case except the dates. On September 23, 1945, plaintiff left the boat at Miniford Yacht Yard, City Island, New York, moored to two dolphins about 500 feet off shore, until November 29th when it sank. Plaintiff had removed the ship's papers and personal belongings and turned the boat over to the boat yard. Defendant contended that it was relieved of liability on the policy because of a breach of the warranty. The jury found for the defendant and plaintiff appealed. The Court of Appeals affirmed the lower Court holding that there was evidence sufficient to show that in the area the customary way to lay up a boat and place it out of commission was to put the boat up permanently in some unexposed place, that the customary procedure was to have the boat pulled ashore rather than be left afloat.

A somewhat similar warranty was under consideration in *Robinson et al. v. Home Ins. Co.*, 5 Cir., 73 F. (2d) 3, 4, where the warranty was: "Warranted laid up, during the entire term of the policy, at dock, St. Marys, Georgia." The owner considered it necessary to remove the fishing boat 31½ miles into fresh water to rid it of barnacles and worms. The insurance agent was notified and the company had knowledge thereof. A fire occurred and the boat was destroyed. The Court sustained a general demurrer to the petition, stating:

"The policy sued on is one of marine insurance. *Aetna Ins. Co. v. Houston Oil & Transport Co.* (C. C. A.) 49 F. (2d) 121. The above set out typewritten provision is clear and un-

ambiguous, and by its express terms purports to be a warranty. It is an express stipulation as to the location of the insured vessel 'during the entire term of the policy.' That provision quite plainly shows that the appellee did not consent to be liable in the event of the loss or destruction of the named vessel occurring at a place other than the one specified in the provision. It negatives the conclusion that appellant agreed to be liable for the destruction of the vessel while it was tied up at a point on the Florida side of the St. Marys river 31½ miles up the stream from the town of St. Marys. *Aetna Insurance Co. v. Houston Oil & Transport Co., supra; Coleman Furniture Corporation v. Home Ins. Co.* (C. C. A.) 67 F. (2d) 347; *Werner v. Travelers' Protective Ass'n* (C. C. A.) 37 F. (2d) 96. A Warranty as to the place where the policy stipulates the insured vessel is to be located during the period covered by the policy makes the right of the insured to recover for damages or loss dependent upon the vessel being at the stated place when the damage or loss occurred; and if damage or loss occurs when the vessel is at a place other than the one named in the policy, the insured has no right to recover on the policy, though that place is quite as safe as the one named in the policy. *Coleman Furniture Corporation v. Home Ins. Co., supra.* Arnould on Marine Insurance and Average (11th Ed.) 833.

\* \* \*

"The alleged custom as to moving such vessels as the Libbie from salt to fresh water while laid up cannot properly be given the effect of depriving the appellee of the benefit of a defense based on the above set out promissory warranty. The relations of the parties to the contract sued on are not governed or affected by the alleged custom because that custom is inconsistent with the explicit provision of the contract, 'Warranted laid up, during the entire term of the policy, at dock, St. Marys, Georgia.' That provision negatives the conclusion that the parties contracted with reference to the alleged custom. *Haupt v. Phoenix Mutual Life Ins. Co.,* 110

Ga. 146, 35 S. E. 342; *Shellnut v. Federal Life Ins. Co.,* 41 Ga. App. 386, 153 S. E. 102."

In instant case, plaintiff did not notify the insurer or seek permission to remove the boat from the boathouse, but as stated in his complaint, he "took the insured boat from the boathouse in which it was laid up for the winter season." After making inspection and certain repairs, he was in the act of returning the boat to the boathouse under its own power when it struck an underwater object and sank.

Plaintiff cites *Jackson v. British American Assurance Co.,* 106 Mich. 47, 63 N. W. 899, 30 L. R. A. 636, but an examination of that case reveals that provision was made for painting, alterations, and necessary repairs. He also cites *Providence Washington Ins. Co. v. Lovett,* D. C., 119 F. Supp. 371, for the proposition that "laid up and out of commission" must be construed in light of the custom and practice of the particular locality; also, *Wigle v. Aetna Casualty and Surety Co.,* D. C., 177 F. Supp. 932; *Gelb v. Automobile Ins. Co., of Hartford, Conn., supra; Robinson et al. v. Home Ins. Co., supra;* and *Schaefer v. Home Ins. Co., supra,* to like effect and contends that it is the custom and practice of the boat owners on Lake Murray to repair their boats during the winter months in the manner employed in this case.

The manner or custom of laying up and putting out of commission a boat on Lake Murray is not a matter of concern here as it is conceded that the method of storage employed by the insured was sufficient to come within the provisions of the warranty and had the boat sunk or sustained damage while in storage in the boathouse during the warranty period, defendant would have been liable.

We are of opinion that the risk of striking an underwater object while the boat was being operated under its own power was one of the risks sought to be obviated by the terms of the warranty, that the Order and judgment appealed from should be set aside and judgment entered for defendant; and it is so ordered.

Reversed.

STUKES, C. J., and OXNER, LEGGE and Moss, JJ., concur.