MARINE CHARTER & STORAGE LTD., Plaintiff,

v.

ALL UNDERWRITERS AT LLOYDS OF LONDON Subscribing to Cover Notes 2H04/1291; 2H173; 2HH0592; 2H173737, et al., Defendants.

No. 84–6668–Civ–ZLOCH.

United States District Court, S.D. Florida.

Feb. 13, 1986.

Ben Weaver, Weaver, Weaver, Lardin Liroff, Ft. Lauderdale, Fla., for plaintiff.

G. Morton Good, Smathers & Thompson, Miami, Fla., for defendant Kershaw individually for certain underwriters at Lloyds & C.A. Hansen.

William B. Milliken, Hayden & Milliken, Miami, Fla., for Ropner Ins., Ltd.

Sean Moore, Ft. Lauderdale, Fla., for Cape Anne Towing.

John C. Seipp, Miami, Fla., for Certain Underwriter at Lloyds.

David R. Canning, Mitchell Harris Canning & Murry, Miami, Fla., for Lyle & Sons Towing.

## ORDER ON VARIOUS MOTIONS

ATKINS, District Judge.

In general, this case involves the interpretation of a marine insurance policy. More specifically, this cause is before the court on two motions concerning Robin Kershaw. First, Kershaw, individually and on behalf of certain underwriters at Lloyds (hereinafter referred to as "Lloyds"), has moved for summary judgment on the issue of insurance coverage. The motion and corresponding memoranda address the issue of whether there was a breach of endorsement number 5 concerning the "Laid Up and Out of Commission" warranty that would void coverage under the policy. Second, Kershaw has moved to strike paragraph 4 of the Strauss affidavit submitted by plaintiff.

## I. THE MOTION TO STRIKE

Paragraph 4 of Strauss' affidavit raises an inference that the insurer's agent approved the move next door for hauling and repair. This inference could support a waiver or estoppel theory. Specifically, Strauss states that Ted Hall was informed that M/V "MARCO POLO" was going to be moved from Anchorage Marine to Sea Land Marine for hauling out of the water and bottom work. A few days later, Hall examined the boat at Anchorage Marine. He never objected to the move to Sea Land and never indicated that the move would affect the insurance coverage.

Plaintiff's estoppel theory appears to require a factual determination that would preclude summary judgment. However, defendants strongly assert that estoppel is not an issue in this lawsuit. Plaintiff has never raised the issue of estoppel or waiver although these matters must be pled with specificity. Rule 8(c) of the *Federal Rules of Civil Procedure* provides (in pertinent part):

> In pleading to a preceding pleading, a party shall set forth affirmatively ... estoppel ... waiver, and any other matter constituting an avoidance or affirmative defense.

Accordingly, the motion to strike portions of the Strauss affidavit is GRANTED. Therefore, the estoppel issue shall not be considered by the court at this time. However, plaintiff's *ore tenus* motion to amend the complaint to include the estoppel issue is GRANTED. *See Fed.R.Civ.P.* 15(a). Plaintiff shall have fifteen days to amend the complaint from the file stamp date of this order.

## II. THE MOTION FOR SUMMARY JUDGMENT

Defendants list several material facts which form the basis of the motion for summary judgment. Since plaintiff has not directly attacked these facts, it would appear that there is no genuine dispute as to the following:

1. Effective October 22, 1982 through October 22, 1983 defendants issued hull policy 2H04/1291, insuring the motor vessel M/V "MARCO POLO" against losses and damages.

2. Endorsement number 5, effective January 1, 1983 through May 1, 1983, provides as follows:

> In consideration of a return premium of $1,600.00 it is hereby understood and agreed Warranted by the Assured that the said vessel shall be laid up and out of commission from January 1, 1983 to May 1, 1983 at Anchorage Marine, Fort Lauderdale, Florida.
> All other terms and conditions remain unchanged.
> ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

3. Endorsement number 5 was issued February 1, 1983 at the request of the plaintiff, and mailed to plaintiff on the same date, with a copy to Mr. Leander, plaintiff's representative in Fort Lauderdale having authority over the supervision and repairs to the vessel.

4. On April 12, 1983, the M/V "MARCO POLO" under tow, was moved from its warranted laid up premises at Anchorage Marine to Sealand, Inc. where she was hauled for the purposes of bottom work.

5. On April 30, 1983, when returning from Sealand, Inc. to the warranted laid up premises at Anchorage Marine, again under tow and her own power, the M/V "MARCO POLO" grounded, capsized and sustained the damages being sought in the present suit.

6. When the M/V "MARCO POLO" capsized and partially sank, it was not within the property boundaries for Anchorage Marine.

7. On April 30, 1983, the date of the casualty sued upon, the policy of insurance including endorsement number 5 was in full force and effect.

After reviewing the memoranda regarding this motion, plaintiff's response suggests a need to discuss two points.[1] First, the court notes that there is no genuine dispute regarding the location of the accident. In plaintiff's response, it was asserted that the "MARCO POLO" grounded and capsized after it returned to the Anchorage/Cable West basin and canal. During oral argument, however, plaintiff conceded that the accident occurred while the ship was outside the property boundaries of Anchorage Marine.[2] The second point raised by plaintiff concerns the heart of the matter—whether the casualty was covered

---

1. Plaintiff also asserted an estoppel theory based upon the Strauss affidavit; however, the court's ruling on this issue makes further discussion unnecessary.

2. The lease of Anchorage Marine describes the property boundaries as follows:

> Said Lessor does this day lease unto Lessee, and said Lessee does hereby lease and take as tenant the real estate shown on the diagram attached hereto as Exhibit "A," also known as the following portion of the real property located at 2491 State Road 84, Fort Lauderdale, Broward County, Florida, to wit: *Starting 70" North of Shed No. 14 and running South to Route 84* in Fort Lauderdale, Florida, to include, basin under covered sheds, large paint shed, central lift, office, woodworking shop, and parts of Department building ex-

cluding existing vacant building in south west corner of property and space for four (4) parking spaces.' This lease includes stationary power tools, pressure washer and compressors and use of lift truck. The use of the lift truck will be limited to six (6) months. Total area of lease includes certain properties known as Anchorage Marine at 2491 West State Road 84, *excluding the* south west corner building and its four (4) parking spaces, the tower building, the used car sales lot, the three and one half (3½) acres of swamp to the east, *water and land beyond seventy fee (70′) north of the existing concrete sheds and private residence . . ."* (emphasis added.)

Plaintiff concedes that the casualty occurred while the ship was in waters beyond seventy feet north of the existing concrete sheds.

under the policy in light of the endorsement and the relevant factual circumstances.

Construction of a contract is generally a question of law. When the terms of the contract are certain, the court's sole responsibility is to enforce the contract without modifications. It is only when the contract is ambiguous that the court must "interfere to reach a proper construction and make certain that which in itself is uncertain." 11 Fla.Jur.2d, *Contracts* § 101 (1979). "Construction of a contract is ordinarily a matter of law for the court, regardless of however ambiguous, uncertain, or difficult its terms may be ..." *Id.*, § 102. The goal of contract interpretation is to effectuate the expressed intent of the parties as reflected in the agreement and the surrounding circumstances at the time the agreement was formed. *See id.*, § 107; *see also J & S Coin Operated Machines v. Gottlieb*, 362 So.2d 38, 39 (Fla. Dist.Ct.App.1978); *Reliance Insurance Co. v. Brickencamp*, 147 So.2d 200, 202 (Fla. Dist.Ct.App.1962).

■ The relevant portions of the subject insurance policy include the following terms:

HANSEN ALL RISKS YACHT FORM Coverage.

The insurance provided by this Section covers, subject to the exclusions and limitation of this policy, against ALL RISKS of physical loss of damage to the property covered from any external cause, as well as physical loss of damage directly caused by fire, explosions, bursting of boilers, breakage of shafts or any latent defect in the machinery or hull (excluding the cost and expense repairing or replacing any defective part), provided such loss or damage has not resulted from want of due diligence or intentional damage by the owners of the Yachts or by the Assured; provided always that the amount recoverable hereunder shall not exceed the amount of insurance. Warranties and General Conditions (Applicable to all coverages unless otherwise indicated.)

Privileges. In port and at sea, under power or sail, in docks and graving docks, in hauling and launching, and on ways, gridirons, pontoons, and on shore. With leave to sail with or without pilots to tow and assist vessels or craft in all situations and to be towed and to go on trial trips.

Warranted by the Assured that the said vessel shall be all year in commission.

After re-outfitting in U.S. yard Privilege is granted for occasional charter....

Endorsement No. 5

In consideration of a return premium of $1,600.00 it is hereby understood and agreed Warranted by the Assured that the said vessel shall be laid up and out of commission from January 1, 1983 to May 1, 1983 at Anchorage Marine, Fort Lauderdale, Florida.

All other terms and conditions remain unchanged.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

The facts provide a flavor for the circumstances surrounding the modification of the insurance policy with the endorsement. The policy was issued in November of 1982 and was for full navigation subject only to certain navigational geographic limits. The Privileges Clause is contained in the standard printed form of contract as issued in November. In January of 1983, the vessel was placed in a shipyard for extensive repairs, alternations and modifications. At that time the basic policy was modified, at the insured's request, to reflect that it was being withdrawn from navigation. A typewritten endorsement was issued reflecting that the insured warranted that the vessel would be laid up and out of commission from January 1, 1983 to May 1, 1983 at Anchorage Marine, Fort Lauderdale, Florida. In consideration of this endorsement the insured received return of premium of $1,600.00. During that lay up period the vessel was removed from the warranted location and while outside the warranted location sustained a casualty.

Hall's affidavit emphasizes the significance of the location. During January of 1985, Mr. Leander contacted Hall and informed him that the M/V "MARCO POLO" was going into the Cable Marine yard for extensive overhaul and re-outfitting and would be in their custody and control during that period. Hall specifically suggested that it would be best to utilize a "Laid Up and Out of Commission Endorsement," because he was concerned about the degree of coverage under the yard policy. Hall eventually obtained permission for a four month lay up endorsement which provided for a $1,600.00 return premium. Later, when Strauss, President of Cable Marine, notified Hall that the location of the vessel had changed, he quickly changed the location endorsement from the premises of Cable Marine to the premises of Anchorage Marine.

The Fifth Circuit case of *Robinson v. Home Insurance Co.,* 73 F.2d 3 (5th Cir. 1934), *cert. denied,* 294 U.S. 712, 55 S.Ct. 508, 79 L.Ed. 1246 (1935) is directly on point. In *Robinson,* the hull policy issued by the defendant contained a provision, "warranted laid up, during the entire term of policy, at dock, St. Mary's Georgia. The vessel was destroyed by fire while it was docked on the St. Mary's River at a point three and one-half miles upstream from the town of St. Mary's where it had been moved to clean and scrape the bottom. The District Court sustained a demurrer to the complaint in spite of the fact "that it was the usual, universal, customary, and general practice ... to move such steamers from salt to fresh water while laid up." *Id.,* at 4. In affirming, the court stated:

> The policy sued on is one of Marine Insurance. The above set out, typewritten provision is clear and unambiguous, and by its express terms purports to be a warranty. It is an express stipulation as to the location of the vessel 'during the entire terms of the policy.' That provision quite plainly shows that the *appellee did not consent to be liable in the event of a loss or destruction of the main vessel occurring at a place other than the one specified in the provision.*

It negatives the conclusion that appellant agreed to be liable for the destruction of the vessel while it was tied up at a point on the Florida side of the St. Mary's river three and one-half miles up the stream from the town of St. Mary's. A warranty as to the place where the policy stipulates the insured vessel is to be located during the period covered by the policy makes the right of the insured to recover for damages or losses dependent upon the vessel being at the stated place when the damage or loss occurs; *and if damage or loss occurs when the vessel is at a place other than the one named in the policy the insured has no right to recover on the policy, though that place is quite as safe as the one named in the policy.*

*United States Fire Insurance Co. v. Cavanaugh,* 732 F.2d 832, 834–35, 840 (11th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984); *Tsalapatas v. Phoenix Insurance Co.,* 236 S.C. 508, 115 S.E.2d 49 (1960); *Schaefer v. Home Insurance,* 239 Mo.App. 586, 194 S.W.2d 718 (1946).

Plaintiff's attempt to distinguish *Robinson* is not persuasive. Specifically, plaintiff asserts that a lay-up warranty does not concern the location of the ship but only refers to its condition. However, the cited authority does not support this proposition. For example, in *Campbell v. Hartford Fire Insurance Co.,* 533 F.2d 496 (9th Cir.1976), the court specifically stated: "There are cases where the policy requires lay up in a particular location." *Id.,* at 498. However, the court was not faced with that type of clause. *Id.,* at 499. Similarly, the court was not faced with a "location requirement" in *Goodman v. Fireman's Fund Insurance Co.,* 600 F.2d 1040 (4th Cir. 1979). In that case, the warranty provision simply read:

> LAYUP WARRANTY. Warranted that the said vessel shall be laid up and out of commission from October 1st at noon, until May 1st, at noon.

*Id.,* at 1041.

In this case, plaintiff warranted that the M/V "MARCO POLO" would be laid up

and out of commission at Anchorage Marine from January 1, 1983 to May 1, 1983. Since the risk of casualty was substantially reduced because the vessel was to remain out of commission at a specified marina where the vessel was sheltered and not subject to all of the hazards of an active vessel, the plaintiff received a return of premium of $1,600.00. The movement of the vessel imposes an increased risk of casualty upon the underwriters for which they have not been paid. If plaintiff elects to move the vessel under these circumstances, then he does so at this own peril.

Therefore, it is ORDERED AND ADJUDGED that the motion for summary judgment is GRANTED.