568 So.2d 944 (1990)
MARINE CHARTER & STORAGE, LTD., INC., Appellant/Cross Appellee,
v.
ALL UNDERWRITERS AT LLOYDS OF LONDON SUBSCRIBING TO COVER NOTES 2H04/1291; 2H173; 2HH0592; 2H173637; Orion Insurance Co. Ltd., et al, Appellees/Cross Appellants, and C.A. Hansen Corp., Appellee.
Nos. 88-2272, 88-2856.
District Court of Appeal of Florida, Fourth District.
September 12, 1990.
Rehearing Denied November 8, 1990.
Ben J. Weaver and Kimberly Whitaker of Weaver, Weaver & Petrie, P.A., Fort Lauderdale, for appellant/cross appellee.
G. Morton Good and Robert C. Shearman of Kelley Drye & Warren, Miami, for appellee/cross appellant all Underwriters at Lloyds of London.
LETTS, Judge.
Lloyds of London insured a ship which, upon arrival from Greece, was taken to Anchorage Marine on the New River in Fort Lauderdale for extensive refitting, renovation and repair. In order to obtain an insurance premium reduction, the ship requested a "laid-up and out of commission" endorsement to run "from January 1, 1983 to May 1, 1983 at Anchorage Marine, *945 Fort Lauderdale, Florida." During this time-frame, the ship was moved to another repair yard one-half mile down the river and while making the return trip to Anchorage Marine capsized and sank. Thereafter, Lloyds denied coverage claiming the two trips violated the policy endorsement. The trial court entered a summary judgment in favor of Lloyds, a disposition of which we approve, though we arrive at an affirmance by somewhat different rationales.
During the long, drawn-out litigation of this matter over the last seven years, the controversy was removed to federal court where Lloyds also successfully sought and obtained a summary judgment in its favor on the issue of coverage. Thereafter, the federal court decided it had no jurisdiction and the matter was returned to the state court. Upon consideration anew, the state trial judge decided that the summary judgment in federal court was "dispositive" and that he was "required to consider that this [the federal summary judgment] is the dispositive act of an earlier judge in this case." Frankly, we disagree with this reasoning, but nevertheless conclude that the trial court was right for the wrong reason. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979). Thus, the summary judgment in favor of Lloyds was appropriate.
Since we are of the opinion that the summary judgment granted in the trial court was proper, there is no need for protracted discussion as to why we do not believe the federal order was binding. Suffice it to say, by its own admission, the federal court had no jurisdiction, so its order could hardly be dispositive. See Desert Empire Bank v. Insurance Co. of North America, 623 F.2d 1371 (9th Cir.1980); Wilson v. Sandstrom, 317 So.2d 732, 741 (Fla. 1975).
Turning to the question of whether there was coverage, the policy endorsement language is perfectly clear and unambiguous. Specifically, it requires that the ship remain located "at Anchorage Marine"[1] and be "laid-up and out of commission." The ship did not remain at Anchorage Marine and the loss was occasioned because it was moved to another facility one-half mile away. This move was not permitted under the terms of the endorsement and its movement cannot be excused as a deadweight tow. On the return trip, when the accident occurred, the ship's own engines were used to help navigate while it was clearly unfit for any voyage. No one denies that the ballast had been removed as had the porthole covers adjacent to the waterline.
There have been several cases construing the term "laid-up and out of commission" and they have not all reached uniform conclusions. Robinson v. Home Insurance Co., 73 F.2d 3 (5th Cir.1934); cert. denied, 294 U.S. 712, 55 S.Ct. 508, 79 L.Ed. 1246 (1935); Providence Washington Insurance Co. v. Lovett, 119 F. Supp. 371 (D.R.I. 1953). However, we have found no case which supports the proposition that a ship operating on a navigable stream under its own power is "laid-up." By contrast, there is a case from the South Carolina Supreme Court, very similar to the one at bar, in which the boat was moved only three hundred yards from its dock to effect certain repairs while under a "laid-up and out of commission" policy of insurance. Tsalapatas v. Phoenix Insurance Co., 236 S.C. 508, 115 S.E.2d 49 (1960). We agree with the ultimate paragraph in that case:
We are of the opinion that the risk of striking an underwater object while the boat was being operated under its own power was one of the risks sought to be obviated by the terms of the warranty.
Id. 115 S.E.2d at 52.
Similarly, in the case at bar, the ship ran aground while using its own power to help navigate. As a result, it listed and water poured through the open portholes causing it to founder. See also Campbell v. Hartford Fire Insurance Co., 533 F.2d 496 (9th *946 Cir.1976); Marine Charter and Storage, Ltd. v. All Underwriters at Lloyds of London, 628 F. Supp. 740 (S.D.Fla. 1986). Such a happening was not covered under the endorsement. It is argued that the ship had, in fact, arrived back within the geographical limits of Anchorage Marine when the mishap occurred. We do not believe that this argument is persuasive. First of all, the ship was returning from a policy-forbidden, and not yet completed, voyage and this was much more than a deadweight transfer from one part of the same facility to another. Second, the navigation in progress at the moment of running aground was not compatible with the requirement that the ship be laid-up and out of commission. Accordingly, we affirm.
In view of the result reached above, we do not find it necessary to address the remaining points on appeal, except that the cost judgment is also affirmed.
An interesting development has occurred in this case since oral argument. Simultaneously with the penning of this opinion, and some four months after oral argument, the appellant filed a suggestion of bankruptcy which, while unaccompanied by any other request for relief, is presumably aimed at securing a stay in this court. We do not believe a stay is appropriate and adopt in toto the opinion of Chief Judge Schwartz in Shop in the Grove, Ltd. v. Union Federal Savings and Loan Association of Miami, 425 So.2d 1138 (Fla. 3d DCA 1982) as follows:
We deny the motions on the ground that the present appeals by the debtor-defendant from judgments rendered against it do not fall within the purview of this provision. While we are guided by no prior authority whatever under the recently enacted statute, it seems self-evident that an appeal, initiated and to be prosecuted by the debtor may be considered neither the "continuation ... of a ... proceeding against" it, cf. State ex rel. Merchants' Nat. Bank v. Hull, 37 Fla. 579, 20 So. 762 (1896); the "enforcement" of the judgments previously obtained; nor an "act to obtain possession" of its property. The manifest purpose of the automatic stay provision is to act as a debtor's shield from proceedings which may adversely affect its interest; that purpose will hardly be served by requiring an indefinite suspension of the appellant's attempts to be relieved of the judgments with the obvious effect of acting as the debtor's sword against the creditor's claims upon it. Furthermore, although the matter is not of direct interest to us, it seems totally unconducive to an orderly administration of the petitioner's affairs in the bankruptcy court to permit it to claim the court's protection from the full effect of adverse judgments while simultaneously maintaining that it may, at some unknown time in the future, secure a total reversal of those judgments on appeal. In any event, addressing an issue which is within our concern, we do not believe that, in exercising the necessary control over our own docket, we are required to or should permit these appeals to remain in limbo indefinitely. Instead, the appellant-debtor must be required to fish or cut bait and either pursue these appeals or submit the judgments as they are for such relief as the bankruptcy court may afford.
For these reasons, it is ordered that the appellant shall prosecute these appeals in accordance with the Florida Rules of Appellate Procedures, or they shall stand dismissed. (footnotes omitted).
Notwithstanding our alignment with Shop in the Grove, we note a recent Florida Supreme Court case bearing on this question. In W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two, Ltd., 545 So.2d 1348 (Fla. 1989), the court held that state law claims can proceed despite bankruptcy. However, the Supreme Court never mentioned Shop in the Grove and appeared to predicate its holding on the posting of a supersedeas bond. A resolution of this matter is obviously of great public importance and we, therefore, certify the following question:
IS OUR DECISION HERE EFFECTIVE OR DID THE FILING OF A SUGGESTION OF BANKRUPTCY CREATE AN AUTOMATIC STAY OF ALL PROCEEDINGS *947 IN THIS COURT IF FILED BEFORE THE ISSUANCE OF THIS OPINION?
AFFIRMED.
DELL, J., concurs.
STONE, J., concurs in part and dissents in part with opinion.
STONE, Judge, concurring in part and dissenting in part.
I would reverse the judgment and remand for a new trial. In my judgment, the record reflects sufficient conflicting evidence to preclude entry of a summary judgment on the question of whether the vessel was operating under its own power (it was in tow using its engines only for braking purposes) and was at Anchorage Marine at the time it sank (it was in the Anchorage Marine basin and turning area some 200 yards from the dock). Appellees do not contend that the "laid-up" language of the policy precludes moving the vessel in the immediate area of the facility. Additionally, there is an allegation that the insurance company knew that the vessel was being "laid-up" for the purpose of refitting and also was on notice that the vessel earlier was to be moved from another location to Anchorage Marine.
I concur with that portion of the opinion concluding that the trial court was not required to consider the federal court summary judgment dispositive and also concur as to the certified question.
NOTES
[1] There is a fact question as to whether the ship was located at Anchorage Marine or Cable Marine. Since any such variation would further support the argument that the policy endorsement was violated, we do not deem this important. Furthermore, it is undisputed that Anchorage Marine subsumed Cable Marine.