JARVIS & SONS, INC., et al., Respondents,

v.

INTERNATIONAL MARINE UNDERWRITERS, et al., Appellants,

Dolliff, Inc., et al., Defendants,

and

Dolliff, Inc., Third Party Plaintiff,

v.

Kim Brown, Third Party Defendant.

No. A08–1402.

Court of Appeals of Minnesota.

July 7, 2009.

J. Mark Catron, Stacey H. Sorensen, Hansen, Dordell, Bradt, Odlaug & Bradt, P.L.L.P., St. Paul, MN, for respondents Jarvis, et al.

Keith J. Kerfeld, Grim D. Howland, Tewksbury & Kerfeld, P.A., Minneapolis, MN, George M. Velcich, Belgrade and O'Donnell, P.C., Chicago, IL, for appellants.

Thomas E. Harms, Thomas E. Harms, PLLC, Edina, MN, Lee A. Henderson, Hessian & McKasy, P.A., Minneapolis, MN, for respondent Dolliff, Inc.

Vincent Moccio, Philip Sieff, Cindy L. Butler, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, MN, for respondent Schreiners.

Kenneth W. Dodge, Stich, Angell, Kreidler & Dodge, P.A., Minneapolis, MN, for respondent Brown.

Considered and decided by MINGE, Presiding Judge; WORKE, Judge; and COLLINS, Judge.*

## OPINION

MINGE, Judge.

Appellant International Marine Underwriters (IMU) seeks review of a judgment declaring that its policy provided liability-insurance coverage for personal injuries suffered from a fall on a boat. IMU challenges the district court's grant of summary judgment in favor of the insured, respondent Jarvis & Sons, Inc. (Jarvis), arguing that the district court erred in holding that IMU has a duty to defend and indemnify Jarvis in the underlying personal-injury suit. Because we conclude that the district court correctly interpreted the insurance policy to provide coverage, we affirm.

## FACTS

In the afternoon of October 22, 2005, Susan Schreiner sustained an injury to her foot when she fell through an open hatch in the deck of the 150–passenger *Afton Princess*, a vessel owned by Jarvis, a charter boat company operating on the St. Croix River. At the time of the incident, the vessel was moored at the Port of Afton. Schreiner had come aboard to decorate for a wedding voyage which was to commence within approximately one hour. After the fall, the *Afton Princess* left its moorings, travelled to the public marina in Afton to board passengers, and proceeded on the scheduled cruise.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Schreiner and her husband sued Jarvis, seeking damages for her injury. Jarvis submitted a claim to IMU, an insurance company with which Jarvis had liability coverage. IMU, however, denied coverage and refused to defend Schreiner's claim, citing provisions of the policy which require Jarvis's insured vessels to be "laid up and out of commission" from October to April. Jarvis brought the present declaratory judgment action, claiming that the policy provided coverage and created a duty to defend and indemnify Jarvis.[1]

The district court decided cross-motions for summary judgment in the declaratory-judgment action in favor of Jarvis, finding that the liability policy provided coverage of the Schreiner accident and obligated IMU to defend and indemnify. The district court granted Jarvis reasonable costs and attorney fees because IMU had breached its insurance contract by wrongfully refusing to defend Schreiner's claim.

The insurance policy at issue was effective from June 7, 2005, to June 7, 2006. During that period, the policy's "Protection and Indemnity Clause" obligated IMU to pay "such sums as the assured, as the owner of [the *Afton Princess* and two other vessels] shall have become legally liable to pay . . . on account of . . . injury to . . . any person." The same clause obligated IMU to pay "[c]osts and expenses . . . of investigating and/or defending any claim or suit against the assured arising out of a liability or an alleged liability of the assured covered by this policy." These obligations were "subject to the warranties, terms, and conditions herein mentioned."

The term which is alleged to limit IMU's obligation in the present case is the second "special condition" contained in "Endorsement No. 2," which provides:

**2. *NAVIGATION LAY–UP***

It is warranted that the vessel(s) hereby insured shall be laid up and out of commission from October 1st until April 30th, both dates inclusive, as per Port Risk Endorsement 57A–5 attached.

**Any breach of these warranties shall render this policy void for the period of such breach.**

Although no document titled "Port Risk Endorsement 57A–5" is attached to the policy, there is an "Endorsement # 4." Endorsement 4 purports to be a "Port Risk Endorsement." It states where and how "The Vessel shall be laid up," and the parties do not dispute that Endorsement 4 is what the policy intended to be Port Risk Endorsement 57A–5 and should be construed as constituting a part of the policy. In relevant part, Endorsement 4 provides as follows:

The clauses set forth below shall prevail over any Policy provisions inconsistent therewith.

This insurance is subject to the following warranties:

(1) The Vessel shall be laid up in the port of Afton, MN with liberty to shift (in tow or otherwise) between approved lay-up sites within the port or to proceed to cargo or fitting out berths within said port prior to commencing or preceeding [sic] on a voyage;

. . . .

*If the Vessel commences, or proceeds on, a voyage during the term of this insurance, this Policy shall thereupon terminate as soon as the Vessel leaves her*

---

Brown in failing to secure additional coverage for the October 22 cruise. The district court did not reach this claim, and neither do we.

*moorings to depart from the above named port.*

(Emphasis added.)

The final relevant parts of the policy are Endorsements 10 and 11, which granted Jarvis the right to "navigate" on three specific dates in October 2005, when the lay-up period had already begun. The endorsements both conclude by providing that:

Subsequent to the above [dates], it is understood and agreed that the vessels will be laid up and out of commission until April 30th *as per the Port Risk Endorsement # 4* in the policy.

Any breach of this warranty shall render the policy void for the period of such breach.

(Emphasis added.) There is no endorsement creating an exception to the lay-up warranty for October 22, 2006, the date of the Schreiner accident.

## ISSUES

I. May a Minnesota court exercise subject-matter jurisdiction over this case?

II. Does this court apply federal or state law?

III. Did the district court commit an error of law in finding that the IMU insurance policy created a duty to defend and indemnify Jarvis for any damages arising from the injury to Schreiner?

## ANALYSIS

### I.

 The first issue is whether Minnesota courts may exercise subject-matter jurisdiction over this case. Although none of the parties raise the issue of subject-matter jurisdiction, Minnesota appellate courts are to consider jurisdiction sua sponte whenever it might be in question. *Davidner v. Davidner*, 304 Minn. 491, 493, 232 N.W.2d 5, 7 (1975).

 The United States Constitution's Admiralty Clause provides that the federal "judicial power shall extend ... to all cases of admiralty and maritime jurisdiction." U.S. Const. art. III, § 2. The United States Code grants the federal district courts "original jurisdiction, exclusive of the courts of the States, of [a]ny civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*" 28 U.S.C. § 1333(1) (2006) (emphasis added). The Supreme Court has held that an insurance contract for a small commercial watercraft operating on navigable inland waters between two states is considered a "maritime contract" so that the "Admiralty Clause of the Constitution brings [a suit involving that contract] within federal jurisdiction." *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1955) (claim pursuant to insurance contract covering small houseboat on artificial lake between Texas and Oklahoma). However, cases within federal maritime jurisdiction may still be brought in state court through the saving-to-suitors clause of 28 U.S.C. § 1333, where the suit is brought in personam, and where the suit is not brought pursuant to certain federal statutes not at issue here. *Leon v. Galceran*, 78 U.S. (11 Wall.) 185, 191, 20 L.Ed. 74 (1870); *Nunez v. American Seafoods*, 52 P.3d 720, 722 (Alaska 2002); *cf. Griswold v. Steamboat Otter*, 12 Minn. 465, 468, 12 Gil. 364, 369 (1867) (dismissing for lack of jurisdiction an *in rem* case against a riverboat operating exclusively within state borders on the Minnesota River); *see also* 1 Thomas J. Schoenbaum, *Admiralty & Mar. Law* § 4-4 (4th ed. 2004).

Because the suit in this case is brought *in personam* and not pursuant to any other federal statute requiring exclusive federal jurisdiction, Minnesota courts may ex-

ercise jurisdiction through the saving-to-suitors clause.

## II.

 The second issue is what law this court applies. State courts are generally bound to apply federal maritime law in cases under the saving-to-suitors clause of 28 U.S.C. § 1333. *See Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372, 384, 38 S.Ct. 501, 504, 62 L.Ed. 1171 (1918) (holding the rights of a seaman injured while in service of the ship must be measured according to rules of the maritime law); *see also Soderstrom v. Curry & Whyte*, 143 Minn. 154, 156, 173 N.W. 649, 649 (1919) (holding "Congress has paramount power to fix and determine the maritime law of the land"). State law nonetheless controls in areas where Congress and the federal courts have not opted to create national maritime law. *Wilburn Boat Co.*, 348 U.S. at 313–14, 75 S.Ct. at 370. In particular, issues of marine insurance are left to the control of state law. *Id.* at 321, 75 S.Ct. at 374 ("We, like Congress, leave the regulation of marine insurance where it has been-with the States."); *Eagle Leasing Corp. v. Hartford Fire Ins. Co.*, 540 F.2d 1257, 1261 (5th Cir.1976); *see also Littlefield v. Acadia Ins. Co.*, 392 F.3d 1, 6–7 (1st Cir.2004) (applying state law in the absence of a federal statute or judicially-created rule governing the interpretation of maritime insurance policies).

 For these reasons, Minnesota law applies in this case.[2]

## III.

The third issue is whether the policy provided coverage. Because this is an ap-

peal from summary judgment, this court asks (1) whether there are any genuine issues of material fact; and (2) whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990).

### Genuine Issues of Material Fact

With regard to the factual basis for the district court decision, IMU alleges that there is a genuine issue of material fact over whether the *Afton Princess* was properly "winterized" at the time of the Schreiner incident. A fact is "material" for purposes of summary judgment when its resolution will affect the outcome of the case. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996). Because we decide, below, that the policy at issue obligated IMU to defend and indemnify Jarvis regardless of whether the vessel was "winterized," resolution of that factual dispute is not material to our decision and we do not consider it.

### Application of the Law

 The central question on appeal is whether the policy covered the incident. The interpretation of an insurance policy is one of law, which this court reviews de novo. *Andrew L. Youngquist, Inc. v. Cincinnati Ins. Co.*, 625 N.W.2d 178, 183 (Minn.App.2001). Courts are to give terms used in an insurance policy their "plain, ordinary, and popular meaning, so as to effect the intent of the parties." *Ostendorf v. Arrow Ins.*, 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970). The policy's provisions are to be considered "in context with all relevant provisions and the language of the policy as a whole." *Smit-*

---

**2.** While *Wilburn Boat* and the other cases cited resolve the question of whether federal or state law ought to apply, there might have remained a question of *which* state's law would apply. However, in the absence of a contractual choice of law provision, "[w]here a conflict of law question has not been raised, Minnesota law will govern." *Miller v. A.N. Webber, Inc.*, 484 N.W.2d 420, 422 (Minn. App.1992), *review denied* (Minn. June 10, 1992). The policy in question here contains no choice-of-law provision, and neither party suggests that another state's laws ought to control under the facts of the case.

*ke v. Travelers Indem. Co.*, 264 Minn. 212, 214, 118 N.W.2d 217, 219 (1962). When a policy, considered as a whole, is not ambiguous, we enforce it in accordance with its terms. *Hammer v. Investors Life Ins. Co. of N. Am.*, 511 N.W.2d 6, 8 (Minn.1994).

 The Minnesota Supreme Court has repeatedly directed that "contract exclusions are to be construed strictly against the insurer" and that courts are to "avoid an interpretation of an insurance contract that forfeits the rights of the insured unless such an intent is manifest in clear and unambiguous language." *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 883 (Minn.2002). With regard to the duty to defend, an insurer is required to defend a suit brought against its insured "[i]f any part of a cause of action is arguably within the scope of coverage of the policy." *Prahm v. Rupp Const. Co.*, 277 N.W.2d 389, 390 (Minn.1979). Where an insurer has breached a duty to defend an insured, the insured is entitled to recover reasonable attorney fees expended in maintaining a declaratory-judgment action to determine coverage. *Am. Standard Ins. Co. v. Le*, 551 N.W.2d 923, 926–27 (Minn.1996), *abrogated on other grounds by Rubey v. Vannett*, 714 N.W.2d 417, 422 (Minn.2006).

 Endorsement 2 provides that Jarvis's insured vessels must be "laid up and out of commission from October 1st through April 30th," and that any "breach" of that provision "shall render this policy void for the period of the breach." Although Endorsement 2 does not define its key terms, it provides that the obligation that vessels be "laid up and out of commission" should be accomplished "as per Port Risk Endorsement 57A–5." As previously stated, the parties agree that there is no Port Risk Endorsement 57A–5 and that Endorsement 4 is that missing endorsement. The record indicates several reasons for concluding that Endorsement 4 provides Endorsement 2's missing definitions, prescribes the requirements for a vessel that is "laid up and out of commission," and establishes what constitutes a "breach" of those requirements.

First, Endorsement 4 describes the place and manner in which Jarvis's insured vessels are to be "laid-up." It uses the same terminology and covers the same topic as the relevant portion of Endorsement 2.

Second, Endorsement 4 provides that its "clauses . . . shall prevail over any Policy provisions inconsistent therewith." Thus, even if the general language ("laid up and out of commission" and "breach") of Endorsement 2 could be interpreted as self-defining, the policy requires that Endorsement 4's more specific definitions prevail whenever the two endorsements are inconsistent.

Third, it is logical for Endorsement 4 to control Endorsement 2's "laid-up" provision. Otherwise Endorsement 4 would be wholly superfluous or require an absurd result. This is because Endorsement 4 establishes, in relevant part, that the policy shall "terminate" "as soon as the Vessel leaves her moorings to depart" on a voyage. If this language is not limited to the October to April lay-up period prescribed in Endorsement 2, the policy would terminate every time the *Afton Princess* left on a voyage at any time of year. Because this interpretation would violate the intent to provide insurance during the operational portion of the year, this is absurd.

Finally, Endorsements 10 and 11 support the conclusion that Endorsement 4 controls the policy's lay-up provision. Those other endorsements state that, after three "allowed" periods of voyaging during the "navigation lay-up warranty," "it is understood and agreed that the vessel will be laid-up and out of commission . . . *as per the Port Risk Endorsement # 4* in the

policy." (Emphasis added.) Reading the policy as a whole, we conclude that the policy is not ambiguous.

 Having concluded that the language of the policy is not ambiguous, we now address whether the policy covers Schreiner's injury. The plain language of the policy's "Protection and Indemnity Clause" creates both a duty to defend and a duty to indemnify, during the full one-year period of the policy, for personal injuries like those allegedly suffered by Schreiner. There is no applicable exception in this case because Endorsement 2's "period of breach," during which the policy is "void" for the vessel's failure to be laid up and out of commission, only begins "as soon as the vessel leaves her moorings," as provided in Endorsement 4, not before. The plain language of the policy indicates that the injury suffered by Schreiner is covered by the policy, and that Jarvis was not in breach of the policy at the time of the injury because the vessel had not yet left its moorings. Accordingly, we determine that IMU breached its contractual duty to defend by refusing to defend Jarvis in the underlying Schreiner litigation and is liable to Jarvis for its reasonable attorney fees in this declaratory-judgment action.

IMU suggests that some foreign cases interpreting marine insurance policies require a different outcome. *See New Hampshire Ins. Co. v. Dagnone*, 475 F.3d 35 (1st Cir.2007); *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040 (4th Cir. 1979); *Gelb v. Auto. Ins. Co. of Hartford, Conn.*, 168 F.2d 774 (2d Cir.1948); *Wigle v. Aetna Cas. & Sur. Co.*, 177 F.Supp. 932

(E.D.Mich.1959); *Tsalapatas v. Phoenix Ins. Co. of Hartford, Conn.*, 236 S.C. 508, 115 S.E.2d 49 (1960). In reviewing these decisions, we note that the policies contained different language from the term of the IMU policy, that none of those policies contained an overriding provision similar to Endorsement 4, and that the claims for which coverage was sought arose out of materially different factual contexts. Accordingly, the analyses in those cases are not helpful in resolving the issues before us.[3]

## DECISION

In this declaratory-judgment action, the district court correctly held that the policy at issue obligated IMU to defend and indemnify Jarvis for its liability for damages arising from the injury to Schreiner. The district court also correctly held that by breaching that duty to defend, IMU became liable to Jarvis for reasonable attorney fees arising in the declaratory-judgment action to determine coverage.

**Affirmed.**

---

**3.** IMU also contends that an "utmost duty of good faith" owed to marine insurers should lead to a different outcome in this case. Assuming Minnesota recognized that duty, because of the lack of ambiguity in the policy, it would not apply here. *See* Thomas J. Schoenbaum, *The Duty Of Utmost Good Faith*

*In Marine Insurance Law: A Comparative Analysis Of American And English Law*, 29 J. Mar. L. & Com. 1, 31–32 (1998) (noting such a duty "[n]ormally ... comes to an end with the formation of the contract and the issuance of the policy.").