United States Court of Appeals,

Eleventh Circuit.

No. 94-5254.

HILTON OIL TRANSPORT, a foreign entity, Plaintiff-Counter-Defendant-Appellee,

v.

T.E. JONAS, as lead underwriter, and all of those Lloyd's of London Underwriters subscribing to Policy number BH 89 3404, Cornhill Insurance PLC, as lead underwiter, and all those members of the
institute of London Underwriters subscribing to Policy number BH 89 3404, Defendants-Counter-Claimants-Appellants,


Feb. 20, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 91-410-CIV-CCA), C. Clyde Atkins, Judge.

Before COX, Circuit Judge, DYER, Senior Circuit Judge, and GOETTEL[*], Senior District Judge.

DYER, Senior Circuit Judge:

Claiming that the barge "Hilton" became a constructive total loss as the result of a storm, the owner, Hilton Oil Transport, sued T.E. Jonas, et al. (Underwriters) to recover under its policy of marine insurance. Underwriters denied liability based upon the breach of several warranties, including a trading limits warranty. The district court found against the Underwriters and entered summary judgment for Hilton Oil Transport. We conclude that there were genuine issues of material facts concerning the alleged breach of the trading warranty which precluded the entry of a summary judgment. We reverse and remand.

---

[*]Honorable Gerard L. Goettel, Senior U.S. District Judge for the Southern District of New York, sitting by designation.

*Background*

Hilton Oil Transport owned the barge "Hilton." In May 1990 Hilton requested hull and machinery insurance on Barge "Hilton" through its New York insurance broker John Sexton & Associates, Inc. (Sexton). In turn, Sexton contacted Citicorp Insurance Brokers (Marine) Limited (Citicorp), a London broker authorized to place insurance with Underwriters at Lloyd's. Citicorp requested in its application for a quotation for hull and machinery insurance, and the Underwriters agreed to a quotation for the following trade limits: "Limited to East Coast of USA, Gulf of Mexico and the West Indies or held covered."

In late August 1990 Hilton entered into a charter with Rio Energy International, Inc. (Rio) for two voyages to Puerto Cortes, Honduras. Hilton did not advise Sexton, Citicorp or the insurers of barge "Hilton" of the voyages to Puerto Cortes, Honduras, nor did it request that barge "Hilton" be "held covered" for the voyages or agree to pay an additional premium.

Early in September 1990 the tug "OTC Elizabeth" picked up barge "Hilton" in Puerto Rico. It was towed to Amuay, Venezuela to load asphalt for the Government of Honduras. Later the tug and barge voyaged to Puerto Cortes, Honduras. A month after arrival, barge "Hilton" was towed to Puerto Castilla, Honduras. On November 4, 1990, after completion of the cargo discharge, Hilton ordered the tug and barge to sail to Puerto Rico. However, the port officials refused to issue a sailing clearance to depart from Puerto Castilla because the Honduran government was asserting claims against the barge "Hilton." On November 11, 1990, the barge

remained moored at a berth which was unsafe in heavy weather. That night during a storm, the mooring lines broke and the barge was carried into an area of rock rip-rap and became a constructive total loss.

On December 13, 1990 Hilton initiated a claim against Underwriters. They denied coverage on December 19, 1990.

## Procedural History

Hilton Oil Transport sued the Underwriters to recover on a marine insurance policy for the constructive total loss of its barge "Hilton." Underwriters denied that coverage existed for the alleged loss because the barge was outside of the trading limits specified by the hull and machinery insurance. They also relied on exclusions and other breaches of warranty precluding coverage. Both Hilton and Underwriters moved for partial summary judgment as to liability.

The district court concluded that the loss of the barge Hilton occurred outside of the trading limits warranty but that there was coverage under the policy by virtue of the "held covered" clause contained in the cover note, that the Underwriters' other defenses were unavailing and therefore entered a partial summary judgment as to liability in favor of Hilton Oil Transport. Subsequently, a bench trial was held on damages. This appeal ensued.

## Issue On Appeal

Was it error for the district court to determine on summary judgment that coverage under the policy existed by virtue of the

"held covered" clause in the cover note.[1]

*Discussion*

The liability vel non of the Underwriters hinges on the application of the "held covered" clause to the facts of this case. The crucial question to be resolved is whether Overman, the managing director of Hilton Oil Transport, intentionally breached the trading limits warranty without notice to the Underwriters.

In the absence of a "held covered" clause "[a] breach of warranty discharges the insurer from liability and deprives the assured from recourse against the insurer, whether the loss can be traced to the breach or not and even though such breach was innocently or inadvertently committed by the assured." *Long,* "Held Covered" Clauses in Marine Insurance Policies, 24 Ins.Counsel Journal 401, 402. The admiralty cases that support this principle are legion and form a judicially established and entrenched federal admiralty rule. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 315, 75 S.Ct. 368, 371, 99 L.Ed. 337 (1955). Thus, in the absence of a "held covered" clause, federal admiralty law, not state law, would control. The district court decided, however,

_____

[1]Underwriters insist on this appeal that the district court lacked diversity jurisdiction. This argument has already been considered and rejected by this Court in Case No. 92-4208 decided on September 29, 1992 and constitutes the law of the case. *Burger King Corp. v. Pilgrim's Pride Corp.,* 15 F.3d 166 (11th Cir.1994).

We have considered Underwriters' claims of noncompliance with policy conditions (U.S. Coast Guard certified), policy exclusions for losses caused by arrest and detainment, war risks and strike clauses, and Hilton Oil's breach of its duty of good faith and fair dealing. We find that these claims are meritless and affirm without opinion. *See* 11th Cir.R. 36-1.

that the "held covered" clause was applicable in this case and since there was no firmly established federal admiralty law governing "held covered" cases, *Wilburn Boat* dictated that state law applies.

Because the consequences of a breach of warranty are so serious, "it was reasonable for Underwriters to find some appropriate means of protecting the assured against such consequences, provided Underwriters, by so doing, were not prejudiced by being *intentionally committed by the assured* to a risk different in character from that contemplated at the time the policy contract was effected." *Long* at 402 (emphasis in the original). In *Campbell v. Hartford Fire Ins. Co.,* 533 F.2d 496 (9th Cir.1976) Judge, now Mr. Justice Kennedy iterated this principle. "By including the clause ["held covered'], the insurer accepts the greater risk occasioned by a possible failure to comply with those warranties, on condition that the breach is not wilful, the assured gives prompt notice in the event a breach occurs and agrees to pay an additional premium." *Id.* at 497-98 (footnote omitted). At oral argument counsel for Hilton agreed that a wilful breach of the trading limits warranty would vitiate the "held covered" provision.

The dilemma as to whether the "held covered" clause applies in this case arises from a factual dispute between the parties. Overman, the managing director of Hilton, asserts that although he knew where the barge was located at the time of the loss, he believed that it was within the trading limits specified in the cover note. Underwriters take the position that Overman

intentionally breached the trading limits warranty.  On oral argument counsel conceded that the district court did not try this disputed issue.

We review *de novo* grants of summary judgment.  Summary judgment is affirmed if, when reviewing the evidence in the light most favorable to the losing party, the court finds that no genuine issue of material fact exists and that the moving party was entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *National Association for the Advancement of Colored People v. Hunt,* 891 F.2d 1555, 1559 (11th Cir.1990).  It is apparent that there are genuine issues of material fact in this case that must be determined by a trial.  If it is found that Hilton did not intentionally breach the trading limits warranty, "held covered" would apply and Hilton will prevail.  If Hilton intentionally breached the trading limits warranty, Underwriters will prevail.

One tag end remains under the sue and labor clause of the policy.  Hilton took necessary action to mitigate damage arising out of a covered peril. See, e.g., *Blasser Brothers, Inc. v. Northern Pan-American Line,* 628 F.2d 376, 386 (5th Cir.1980), *Reliance Ins. Co. v. The Escapade,* 280 F.2d 482, 489 (5th Cir.1960).  Hilton was successful in its efforts in an arbitration proceeding in New York and received $583,000 from Rio Energy for damages to barge Hilton, plus interest and expenses. Rio satisfied the judgment in favor of Hilton by depositing the recovery in an interpleader action brought by *Oil Transport, S.A. v. Hilton Oil*

*Transport and Rio Energy International, Inc.* in the United States District Court for the Southern District of Texas, Houston Division.

Underwriters argue that if they are held liable to Hilton for damages to the barge Hilton, they are entitled to a credit or set off from the amount recovered by Hilton from Rio Energy. Hilton contends that in the event Underwriters are liable to it for the damage to the barge, Underwriters must file their claim in the interpleader action in Texas.[2] In the event Underwriters are found liable to Hilton for damages to the barge, Underwriters must pay the reasonable sue and labor expenses to Hilton. Underwriters are not required to file a claim in an interpleader action in Texas. The amount of any recovery that Hilton obtained against Rio Energy must be set off against the amount otherwise recoverable by Hilton Oil in this case.

REVERSED and REMANDED for further proceedings consistent with this opinion.

_____

[2]The District Court apparently agrees with Hilton because by a footnote to an Order entered on October 18, 1994, it "reminded" Underwriters that the sue and labor claim was now ripe to file in the Texas interpleader action.