**COMMERCIAL UNION INSURANCE CO., Petitioner**

v.

**Dean PESANTE, Respondent.**

**No. C.A. 03–189T.**

United States District Court,
D. Rhode Island.

March 3, 2005.

Seth S. Holbrook, Holbrook & Murphy, Boston, MA, for Petitioner.

Stephen T. Morrissey, Law Office of Stephen T. Morrissey, Wakefield, RI, for Respondent.

## MEMORANDUM AND ORDER

TORRES, Chief Judge.

### INTRODUCTION

Commercial Union Insurance Company ("Commercial Union") brought this action seeking a declaratory judgment that it is not liable on a marine insurance policy issued to Dean Pesante ("Pesante") because Pesante breached an express warranty that the covered vessel would be used only for lobstering.

Commercial Union has moved for summary judgment and the issue presented is whether Pesante's breach of warranty negates coverage under his policy. Because this Court answers that question in the negative, Commercial Union's motion for summary judgment is denied.

### FACTS

Pesante, a Rhode Island resident, owns a commercial fishing vessel named the Oceana and has been engaged in gill netting since 1997. Gill netting is a technique for catching fish that involves dragging nets along the ocean bottom.

Until 2001, Pesante obtained his marine insurance through the Ocean Marine In-

surance Agency and never made any claim. In 2001, Pesante agreed to switch his business to the Christopher & Regan agency if it could obtain insurance on the Oceana for less than what Pesante, then, was paying.

On March 23, 2001, Phillip Christopher requested a price quote from Commercial Union, a Massachusetts insurance company, by sending a fax to Russell Bond, an underwriter for Commercial Union. Included with the fax was an application for insurance describing the Oceana as a "Lobster Day Boat."

Bond quoted a price of $1,550, which, apparently, was less than what Pesante would have had to pay in order to renew his old policy. Accordingly, Pesante accepted Bond's proposal and Commercial Union issued a policy that contained a "Commercial Fishing Vessel Endorsement." The Endorsement included a warranty by Pesante that the "only commercial use of the insured vessel(s) shall be for lobstering."

It is undisputed that, on September 25, 2002, the Oceana had been engaged in gill netting and was returning to port when it collided with a 21–foot Boston Whaler just outside of its home harbor. The occupants of the Boston Whaler were seriously injured and filed claims against Pesante.

Commercial Union has disclaimed coverage on the ground that Pesante breached his warranty that the Oceana would be used only for lobstering. Commercial Union argues that, under federal admiralty law, the breach voided the policy even if there was no causal connection between the breach and the loss. Alternatively, Commercial Union argues that coverage was voided because "the instant breach of express warranty affected the acceptance of the risk, the hazard assumed by the insurer and the premium charged." In support of its motion, Commercial Union has submitted an affidavit from Bond stat-ing that he understood the Oceana to be a "lobster boat" and that if he had known that it was a gill netter, he would have quoted a premium that was approximately 25% higher because "gill netters" pose a higher risk of loss.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case. *Calero–Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 19 (1st Cir.2004). At the summary judgment stage, the court views all facts and reasonable inferences that may be drawn therefrom in the light most favorable to the non-movant. *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633 (1st Cir. 1990).

## ANALYSIS

### I. FEDERAL ADMIRALTY LAW

 There is no question that use of the Oceana for gill netting breached the warranty that it would be used only for lobstering. The issue is whether that breach voided the policy even though the Oceana was not engaged in gill netting when it collided with the Boston Whaler.

Commercial Union cites what it calls a "judicially established and entrenched" federal admiralty rule that failure to literally comply with an express warranty in a marine insurance contract voids the contract even if the breach is not material to

the loss. However, the cases do not support that proposition.

In *Wilburn Boat*, the Supreme Court rejected the notion that federal admiralty law automatically bars recovery under a marine insurance policy for breach of a policy warranty "even though a loss would have happened had the warranty been carried out to the letter." 348 U.S. 310, 312, 75 S.Ct. 368, 99 L.Ed. 337 (1955). In *Wilburn*, the owners of a houseboat obtained an insurance policy in which they warranted that the boat would be used only for "private pleasure purposes." *Id.* at 311, 75 S.Ct. 368. The boat was destroyed by a fire while moored on a lake and the insurer denied coverage on the ground that the boat had been used to carry passengers. *Id.* The *Wilburn* court held that, since there was no federal admiralty rule addressing whether a breach of warranty had to be material to the loss in order to negate coverage, the issue should be decided in accordance with state law. *Id.* at 320–21, 75 S.Ct. 368.

As the First Circuit has said, "[i]n the absence of a settled federal maritime rule, *Wilburn Boat* has generally been interpreted, 'in deference to state hegemony over insurance, to discourage the fashioning of new federal law and to favor the application of state law.'" *Windsor Mount Joy Mutual Ins. Co. v. Giragosian*, 57 F.3d 50, 54 (1st Cir.1995) (quoting *Albany Ins. Co. v. Wisniewski*, 579 F.Supp. 1004, 1013–14 (D.R.I.1984)).

Of course, that does not mean that, under federal maritime law, coverage never can be affected by the breach of a policy warranty. Since *Wilburn*, several federal courts have held that coverage for a loss may be negated by a breach of warranty. *See, e.g., Hilton Oil Transport v. Jonas*, 75 F.3d 627, 630 (11th Cir.1996); *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040, 1043 (4th Cir.1979); *Cotton Blossom Corp.,*

*Inc. v. Lexington Ins. Co.*, 615 F.Supp. 87, 89 (E.D.Mo.1985). However, all of those cases dealt with losses that were related to the breach.

In many of those cases, the court specifically held that coverage was merely suspended for the duration of the breach. *E.g., Cotton Blossom*, 615 F.Supp. at 89 (E.D.Mo.1985) (under both federal and Missouri law "breach of an express warranty in a policy of marine insurance suspends the coverage of the underlying policy during the existence of the breach."); *see also* Thomas J. Schoenbaum, *Warranties in the Law of Marine Insurance: Suggestions for Reform*, 23 Tul. Mar. L.J. 267, 295–96 (1999) ("A well-established doctrine in the American [marine insurance] cases is that breach of warranty does not automatically void the coverage; cover merely is suspended as of the time of the breach."). In other cases, while the court "simply declare[d] that the insurer is 'discharged,'" Schoenbaum, *supra*, at 289, it appears that the loss occurred during the breach. *See, e.g., Hilton Oil*, 75 F.3d at 629 (no coverage where vessel outside trading limits when storm wrecked it); *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1365–66 (11th Cir.1988) (no coverage where vessel beyond 100–mile navigational limit when hurricane destroyed it); *Goodman*, 600 F.2d at 1041–42 (no coverage where vessel in breach of winter "lay up" warranty when vessel sank); *Aetna Ins. Co. v. Dudney*, 595 So.2d 238, 239 (Fla. 4th DCA 1992) (no coverage where yacht beyond navigational limit at time crew member injured in slip-and-fall).

Moreover, the requirement of a causal or temporal connection between the breach and the loss is consistent with general principles of insurance law. *See Highlands Ins. Co. v. Koetje*, 651 F.Supp. 346, 347 (W.D.Wash.1987) (under Washington law "an insurance contract will be voided

upon breach of warranty by the assured only if the breach contributed to the loss sustained or increased the risk of the loss of the type sustained."); *see also* Lee R. Russ & Thomas F. Segalia, *Couch on Insurance*, § 83:22 (3d Ed.1997) ("[T]he breach of a promissory warranty . . . contained in a policy operates to suspend coverage of the policy during the existence of the breach."); Robert E. Keeton, *Insurance Rights at Variance with Policy Provisions: Part Two*, 83 Harv. L.Rev. 1281, 1283–84 (1970) ("[C]ourts tend to construe a warranty clause [in an insurance contract] as suspending liability during the period of noncompliance rather than construing it as terminating all potential liability for loss thereafter . . . .").

Here, the Oceana was not engaged in gill netting when it collided with the Boston Whaler and there is no evidence of any causal connection between its gill netting activities and the loss. Therefore, there is no federal maritime rule that negates coverage for the loss in question.

## II. ACCEPTANCE OF THE RISK

 Commercial Union's alternative argument is difficult to fathom. It is that Pesante's use of the Oceana for gill netting negates his coverage because the "breach of express warranty affected the acceptance of the risk, the hazard assumed, and the premium charged." That argument appears to confuse a claim that coverage under a policy may be negated when a warranty is breached with a claim that a policy may be voided when it was obtained by fraudulent misrepresentations. In the former case, the breach may negate coverage for a loss related to the breach; it may provide grounds for cancellation of the policy and it also may entitle the insurer to recover an additional premium to reflect the risk actually assumed. In the latter case, the policy may be rescinded if the misrepresentations were material and induced the insurer to issue a policy that, otherwise, it would not have issued. *See Evora v. Henry*, 559 A.2d 1038, 1040 (R.I. 1989). Here, Commercial Union seems to be making a hybrid claim that seeks to convert a breach of warranty occurring after the policy was issued into a reason why the breach affected the issuance of the policy.

### CONCLUSION

For the foregoing reasons, petitioner's Motion for Summary Judgment is denied.

It is so ordered.