**Ronald GOODMAN, Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, Appellee.**

No. 78–1577.

United States Court of Appeals, Fourth Circuit.

Argued March 15, 1979.

Decided May 21, 1979.

Melvin J. Sykes, Baltimore, Md., for appellant.

Francis J. Gorman, Baltimore, Md. (Michael L. Cohen, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellee.

Before WINTER and HALL, Circuit Judges, and MILLER,* District Judge.

WINTER, Circuit Judge:

Plaintiff, the owner of a 55′ yacht, sued to enforce a marine insurance policy issued by defendant with respect to damages to the yacht when it sank. The district court granted judgment for defendant ruling that the policy did not cover the particular loss which plaintiff sustained. While we disagree with the principal reasons assigned by the district court, we do agree that judgment for defendant was proper because we conclude that plaintiff breached a warranty contained in the policy and therefore was precluded from recovery thereunder. We affirm.

### I.

As found by the district court, the pertinent facts are that plaintiff owned a 55′ Chris Craft twin-diesel motor yacht which he used for private pleasure purposes. He purchased from defendant a policy of "hull insurance," the pertinent provisions of which are:

Coverage

The insurance provided by this Section covers, subject to the conditions of this policy, against ALL RISKS of physical loss or damage from any external cause. Also, provided the loss or damage has not resulted from want of due diligence by the assured, the owners or managers of the vessel, and subject to the conditions of this policy, this insurance covers loss of or damage to the vessel directly caused by: explosions; breakdown of motor generators or other electrical machinery and electrical connections thereto, breakage of shafts, or any latent defect in the machinery or hull (excluding the cost and expense of replacing or repairing the defective part); negligence of masters (including owner when acting in capacity of master), mariners, engineers, pilots, or repairers provided the repairers are not an assured hereunder.

In addition to Exclusions elsewhere herein this policy does not insure against:

(a) Loss or damage through wear and tear, gradual deterioration, marine borers, vermin, ice and/or freezing, inherent vice, mysterious disappearance, loss of use and delay.

A special condition, typed on the front page of the policy, reads as follows:

LAYUP WARRANTY. Warranted that the said vessel shall be laid up and out of commission from October 1st, at noon, until May 1st, at noon.

In 1975, plaintiff employed professional help to lay up his yacht for the winter, but in September 1976 he undertook to do the work himself. Unfortunately, he omitted to drain the sea water cooling system, the function of which is to aid in cooling the engine, and, more importantly, he did not close the port and starboard sea valves which permitted sea water to enter the cooling system. The cooling system includ-

---

* Honorable James R. Miller, Jr., United States District Judge for the District of Maryland, sitting by designation.

ed two filters which were encased in plastic cylindrical jackets, and because the sea valves remained open and the sea water lines were not drained, water remained in those filters.

The plastic filter jackets broke during the course of the winter due to the freezing of water in the filters, and the breaking of the filter jackets permitted water in the cooling system to flow into the hull through the broken jackets. Indeed, water continued to enter the system through the open valves and to flow through the broken jackets in such volume that the yacht sank as far as the mooring lines would permit it to sink.

The district court found as a fact, and its finding is amply supported, that it is the custom of the Chesapeake Bay region in laying up a vessel for the winter season at least to close the port and starboard sea valves. The district court held that the sinking of the yacht was not covered by the policy because: (1) insofar as the loss was caused by the freezing of the water in the cooling system, the loss was excluded from coverage; (2) the loss was not covered by the "all risks" clause of the policy; and (3) the provision insuring against the negligence of masters—the so-called Inchmaree clause—did not apply.

## II.

■ With one exception, we do not agree with the reasons assigned by the district court for denying recovery. Since *British & Foreign Marine Co. v. Gaunt* [1921] 2 A.C. 41, all risks policies have been construed as covering all losses that are "fortuitous." A loss is not considered fortuitous if it results from an inherent defect in the object damaged, from ordinary wear and tear, or from the intentional misconduct of the insured. However, loss due to the negligence of the insured or his agents has generally been held to be fortuitous and, absent express exclusion, is covered by an all risks policy. *See Avis v. Hartford Fire Insurance Co.,* 283 N.C. 142, 195 S.E.2d 545, 547–49 (1973).

■ The addition of the phrase "external cause" to the "all risks" clause constitutes no real limitation on the scope of the latter. If the loss did not result from inherent defect, ordinary wear and tear, or intentional misconduct, its cause was necessarily external. Nor does the Inchmaree clause limit liability. Its purpose is to broaden, rather than to restrict, coverage under marine insurance policies. *See, e. g., Northwestern Mutual Life Insurance Co. v. Linard,* 498 F.2d 556, 563 (2 Cir. 1974). Significantly, the policy in suit describes the Inchmaree clause as an addition to, and not an exclusion from, the coverage of the policy.

■ While the policy excluded loss or damage through ice or freezing, we do not think that liability is excluded under this provision. The district court reasoned that as the freezing of the water in the cooling system was a cause of the sinking, the loss was excluded from coverage. This reasoning overlooks the fact that it was plaintiff's negligence which caused the freezing and which, coupled with his negligence in failing to close the intake valves, caused the sinking. When two or more causes combine to cause a loss, one of which is insured against while the other is not, the loss is not insured unless the covered cause is the predominant efficient cause of the loss. *See, e. g., Phenix Insurance Co. v. Charleston Bridge Co.,* 65 F. 628, 632 (4 Cir. 1895). We think plaintiff's negligence was the predominant efficient cause of the sinking. While freezing was an intervening cause of the series of events, it was not unforeseeable.

We do agree with the district court that the Inchmaree clause does not extend coverage to plaintiff, but since we would find coverage under the all risks provision if it were considered alone, we turn to the reasons why we do not think that plaintiff can prevail when all of the pertinent language of the policy is considered.

## III.

■ By the terms of the policy, it was warranted that the yacht would be "laid up" and out of commission from October 1 to May 1. Whether a vessel is laid up during the time warranted in a marine in-

surance policy depends upon local custom. *Wigle v. Aetna Casualty & Surety Co.*, 177 F.Supp. 932, 934 (E.D.Mich.1959); *Providence Washington Ins. Co. v. Lovett*, 119 F.Supp. 371, 374 (D.R.I.1953). The district court found, and its finding is not clearly erroneous, that it is the custom in the Chesapeake Bay region at least to close the sea valves as part of the winterizing program. Since plaintiff failed to perform these steps, the vessel was not laid up as warranted in the policy. It is a familiar rule that the breach of an express warranty in a contract for marine insurance releases the insurer from any liability due to the breach. *See, e. g., Capital Coastal Corp. v. Hartford Fire Ins. Co.*, 378 F.Supp. 163, 172 (E.D.Va.1974).

*AFFIRMED.*

K. K. HALL, Circuit Judge, concurring specially:

I concur in the judgment for the reasons assigned by the district court.