**INSURANCE COMPANY OF NORTH AMERICA, Plaintiff-Appellant,**

v.

**LANASA SHRIMP COMPANY, etc., et al., Defendants-Appellees.**

No. 82–6023.

United States Court of Appeals, Eleventh Circuit.

March 5, 1984.

---

C. Robert Murray, Jr., Mitchell, Harris, Canning, Murray & Usich, P.A., Miami, Fla., for plaintiff-appellant.

William B. Milliken, Hayden & Milliken, P.A., Miami, Fla., for defendants-appellees.

Before HILL and HATCHETT, Circuit Judges, and ALLGOOD *, District Judge.

JAMES C. HILL, Circuit Judge:

Appellant, Insurance Company of North America, instituted a declaratory judgment action in the District Court for the Southern District of Florida seeking a declaration that it was not liable under a policy insuring appellees' vessel. After a nonjury trial, the district court entered a judgment declaring appellant liable under the policy. We affirm.

## I

A shrimping vessel, the LANASA BAMBINO, was last seen on December 31, 1980. On that date, the vessel left Key West, Florida, headed for the Dry Tortugas. Area weather conditions were good; no major storms or high seas were reported. The vessel sailed in a seaworthy condition,[1] yet she never returned to port. No wreckage has drifted to shore. No crewmember has been found. To this day, the vessel's disappearance remains unexplained.

The LANASA BAMBINO carried a standard commercial hull marine insurance policy underwritten by appellant, Insurance Company of North America. In pertinent part, the coverage clause of the policy provided for insurance under the following terms:

---

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Appellant argues that the district court's finding of "seaworthiness" is clearly erroneous. However, the court's finding is supported by ample evidence, including testimony from appellees' fleet manager that he supervised a thorough maintenance check of the vessel before her departure. Although appellant's evidence tended to contradict the manager's testimony, we cannot say that the district court's finding of "seaworthiness" is clearly erroneous. *See Movible Offshore, Inc. v. M/V Wilken A. Falgout,* 471 F.2d 268, 271 (5th Cir.1973) (findings of fact in admiralty cases are measured by "clearly erroneous" standard).

Touching the adventures and perils which the Company is contended to bear and take upon itself, they are of the waters named herein, fire, lightning, explosion on shipboard or elsewhere, earthquake, assailing thieves, jettisons, barratry of the master and mariners and all other like perils that shall come to the hurt, detriment or damage of the vessel named herein.

Commonly known as a "perils of the sea" clause, the coverage provision embraces "those perils which are peculiar to the sea, and which are of an extraordinary nature or arise from irrestible force or overwhelming power, and which cannot be guarded against by the ordinary exertions of human skill and experience." *Reisman v. New Hampshire Fire Insurance Co.,* 312 F.2d 17, 19 (5th Cir.1963), *quoting, R.T. Jones Lumber Company, Inc. v. Roen Steamship Co.,* 270 F.2d 456, 458 (2d Cir.1959). We must determine whether the unexplained disappearance of a vessel covered by this type of policy can be presumed to have been caused by a "peril of the sea," as that term is defined in the law of maritime insurance.

## II

■ A number of courts have confronted cases in which the cause of a vessel's sinking could not be determined. *See, e.g., Boston Insurance Co. v. Dehydrating Process Co.,* 204 F.2d 441 (1st Cir.1953); *Saskatchewan Government Insurance Office v. Spot Pack, Inc.,* 242 F.2d 385 (5th Cir.1957) (Spot Pack). In these so-called "unexplained sinking" cases, the courts are agreed that an insured cannot recover on the mere proof of a sinking in calm seas, because it is presumed that the vessel was unseaworthy when she left port—otherwise, she would not have perished—and that the unseaworthiness proximately caused the loss. *See, e.g., Hampton Roads Carriers, Inc. v. Allied Chemical Corp.,* 329 F.2d 387, 390 (4th Cir.), *cert. denied,* 379 U.S. 839, 85

S.Ct. 78, 13 L.Ed.2d 46 (1964); *see* L. Buglass, *Marine Insurance and General Average in the United States* 53 (2d ed. 1981) (hereinafter cited as Buglass) (citing cases). The presumption of unseaworthiness, however, may be rebutted. Thus, if the insured proves that the vessel left port in a seaworthy condition, "a counter presumption arises that the unexplained sinking and consequent loss was caused by some extraordinary, although unknown and unascertainable, peril of the sea." *Darien Bank v. Travelers Indemnity Co.,* 654 F.2d 1015, 1021 (5th Cir.1981), *quoting, Boston Insurance Co. v. Dehydrating Process Co.,* 204 F.2d at 443. In these circumstances, then, the insurer bears the ultimate burden of proving unseaworthiness. *Darien Bank,* 654 F.2d at 1021; *Spot Pack,* 242 F.2d at 388–89; *Tropical Marine Products, Inc. v. Birmingham Fire Insurance Company of Pennsylvania,* 247 F.2d 116, 120–21 (5th Cir.), *cert. denied,* 355 U.S. 903, 78 S.Ct. 331, 2 L.Ed.2d 260 (1957).

Of course, this appeal does not involve a "mysterious sinking." The LANASA BAMBINO disappeared. It is impossible to say that she sank, or that she did not sink. Nevertheless, the shipowners ask us to apply to this case the rule governing "mysterious sinking" cases and hold that where a seaworthy vessel disappears in fair weather and calm seas for unknown reasons, the insurer bears the burden of proving unseaworthiness (and, hence, noncoverage).

■ Apparently, no American decision has considered the present issue in the context of a "mysterious disappearance" case.[2] Treatise writers, however, unanimously conclude that a missing vessel is presumed to have been lost by a peril of the sea. According to Arnould, for instance, "If it be proved that the ship sailed for a given port, the fact of her never having arrived there after the lapse of a reasonable time, will be prima facie evidence of a loss by the perils of the sea ...." 2 J. Arnould, *Law of*

---

2. At least one British court expressed the view that the insurer must prove that an unexplained disappearance was not caused by a peril of the sea. *Munro, Brice & Co. v. War Risks Association, Ltd.* [1918] 2 K.B. 78. On appeal, however, the court reversed, holding it more likely that the missing vessel had been lost through war perils. *Munro, Brice & Co. v. Marten* [1920] 3 K.B. 94.

*Marine Insurance and Average* 656–57 (16th ed. 1981) (footnote omitted). Similarly, Winter writes:

> In the normal case, where a vessel sails in a seaworthy condition and no evidence is forthcoming to indicate that it could have been lost by any peril other than those insured in the policy, it has always been assumed, after the lapse of a reasonable length of time without tidings from the vessel, that it has been lost through a peril of the sea.

W. Winter, *Marine Insurance* 401 (3d ed. 1952) (hereinafter cited as Winter). Even more to the point is the following statement from Buglass' work:

> Where the ship concerned in the adventure is missing and when a reasonable time has elapsed with no news of her, an actual total loss may be presumed (Marine Ins. Act 58). In such cases, the vessel is presumed to be lost by a marine peril unless circumstances indicate that the vessel may have been lost due to war perils (as when a vessel "disappears" in a combat zone in wartime). Should an underwriter wish to raise the defense of unseaworthiness in the case of a "missing" ship, he would have to sustain the burden of proof.

Buglass at 92 (emphasis omitted); *see also* Haehl, *The Hull Policy: Coverages and Exclusions Frequently Employed: F.C. & S., War Risk, S.R. & C.C., Automatic Termination, Cancellation,* 41 Tul.L.Rev. 277, 307–08 (1967) (hereinafter cited as Haehl).[3] It appears to be well established that a seaworthy vessel which disappears without explanation is presumed to have met her doom by a peril of the sea.[4]

### III

The LANASA BAMBINO was seaworthy when she left port on December 31, 1980. She sailed into areas where fair weather and calm seas prevailed. In accordance with the rule we have stated, we must presume that the vessel was lost by a peril of the sea. Further, since the insurer failed to prove that the vessel perished by a peril not covered by the policy, the shipowners are entitled to recover.[5] Accordingly, the judgment of the district court is

AFFIRMED.

**3.** The "missing vessel" problem, it appears, first became acute during World War I when newly introduced weaponry made naval warfare more dangerous to commercial vessels. Winter at 400; Haehl at 307. War risks insurers and commercial hull underwriters, of course, each sought to escape liability for lost vessels by laying responsibility on the other. *See, e.g., Munro, Brice & Co. v. War Risks Association, Ltd.* [1918] 2 K.B. 78. Courts were called upon to decide whether it was more likely that a vessel was lost by a war-related risk—*e.g.,* a submarine torpedo—or by a peril of the sea. These cases were decided on their specific facts. *See* ftn. 2, *supra*. However, the authorities are agreed that the pre-War principle of marine insurance law that a missing vessel is presumed to have been lost by a peril of the sea applies with equal force today. Winter at 401; Haehl at 307.

**4.** In fact, the rule seems so well settled that none of the cited authorities explain its justification. Perhaps, no distinction is to be made between "mysterious sinking" and "mysterious disappearance" cases. If that is so, the reasons supporting application of the rule in the former type of case, *see Spot Pack,* 242 F.2d at 388; *Darien Bank,* 654 F.2d at 1021, would also support its application in the latter.

**5.** We emphasize that the presumption arising from proof of a seaworthy vessel's mysterious disappearance—that the vessel was lost by a peril of the sea—can be rebutted. For example, an insurer might prove the loss to have resulted from a risk expressly excluded by the policy. On the other hand, an insurer might show that, while the vessel left port in a seaworthy condition, she became unseaworthy during the voyage and was lost as a result of her unseaworthiness. *See Spot Pack,* 242 F.2d at 388.