893 F.2d 103
 1990 A.M.C. 1716
 OPERA BOATS, INC. and Greycas, Inc., Plaintiffs-Appellants
Cross-Appellees,
v.
LA REUNION FRANCAISE, Defendant Third Party
Plaintiff-Appellee Cross-Appellant,
v.
CONTINENTAL UNDERWRITERS, LTD., Third Party Defendant-Appellee.
 No. 88-3797.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 2, 1990.
 
 William A. Porteous, III, Porteous, Hainkel, Johnson & Sarpy, New Orleans, La., for Opera Boats & Greycas, Inc.
 Lester J. Lautenschlaeger, Jr., Jacques F. Bezou, DeRussy, Bezou & Matthews, New Orleans, La., for La Reunion Francaise.
 Gary Landry, Lawrence Abbott, New Orleans, La., for Continental.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before CLARK, Chief Judge, RUBIN and WILLIAMS, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 The owner and mortgagee of two vessels that disappeared from their moorings without a trace seek to recover their value under a marine insurance policy. The district court having correctly found that the loss was not covered by any clause of the policy and that no breach of warranty endorsement had issued, we affirm its judgment in favor of the insurer.
 
 I.
 
 2
 Opera Boats, Inc., the owner of the M/V Charlie K and the M/V Carmen, moored these vessels, which were out of service, at a dock in Lafitte, Louisiana. In February 1986, the owner of the dock discovered that the vessels, which had not been regularly inspected, had inexplicably disappeared without a trace. Opera Boats had obtained a policy of marine hull insurance covering both vessels from La Reunion Francaise, via a series of intermediate brokers and agents. This policy contained a "named perils" clause, providing the following coverage:
 
 
 3
 Touching in Adventures and Perils which the Underwriters are contended to bear and take upon themselves, they are of the Seas, Men-of-War, Fire, Lightning, Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of Mart and Counter-Mart, Surprisals, Taking at Sea, Arrests, Restraints and Detainments of all Kings, Princes, and Peoples, of what nation, condition or quality soever, Barratry of the Master and Mariners and of all other like Perils, Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage of the Vessel, or any part thereof, excepting, however, such of the foregoing perils as may be excluded by provision elsewhere in the Policy or by endorsement thereon.
 
 
 4
 The M/V Charlie K was subject to a mortgage to Greycas, Inc., which was named as the loss payee. Greycas also claimed that it was covered by a breach-of-warranty endorsement, but La Reunion Francaise denied that it had issued such coverage because the premiums for it had not been paid.
 
 
 5
 At the close of the insured's case, the district court dismissed the action, finding that the insureds had failed to adduce sufficient evidence to meet their burden of proving that the vessels had been stolen. The court further found, as a matter of law, that theft from a dock was not covered under either the "perils of the sea" clause, or the "assailing thieves" clause. Finally, the district court also found that the parties had not agreed that the insurer would provide breach-of-warranty coverage.
 
 II.
 
 6
 Unlike the disappearance of the M/V Charlie K and the M/V Carmen, this case presents no mysteries. The two vessels, unused and unattended, disappeared from the Intercostal Waterway, with no trace of force or thievery. Traces of paint were found on the side of the dock, and the owner contends this might evidence a collision with a passing ship, but it was not shown that the paint matched the missing vessels, and in any case the owner's expert surveyor found no evidence of a collision or breakaway. Inspection of the area around the dock and the nearby sections of the Waterway revealed no sign of either vessel, although in that area the canal is only about four feet deep and a sunken vessel would have been readily detectable. Indeed, the insured (a term we use to include both Opera Boats and Greycas) does not protest the district court's finding that it produced no substantial evidence at trial regarding what happened to the two vessels, but argues instead that the court misinterpreted the scope of coverage afforded by the policy.
 
 
 7
 When insurance is provided by a named-perils clause, the initial burden is on the insured to prove that loss occurred by the named peril.[1] In P.T. Tugs, Inc. v. United States Fire Ins. Co.,[2] a case involving the unexplained sinking of a tugboat in the middle of the Mississippi River, we held that when the insured showed that a vessel that sunk during a voyage had been seaworthy before sinking, a presumption arose that the loss was caused by a peril of the sea.[3] Similarly, other circuits have held that this presumption of seaworthiness applies where a vessel at sea disappears without explanation.[4]
 
 
 8
 Underlying both the unexplained sinking and the mysterious-disappearance cases, however, is a reasonable factual basis to support the presumption of seaworthiness. This basis may be provided from evidence regarding the condition of the vessel before it put to sea,[5] or it may be inferred from the fact that the ship was seaworthy and already under way at the time of its disappearance.[6] No case cited to us has, however, extended the presumption of seaworthiness to a vessel moored unattended and on no voyage.
 
 
 9
 The unexplained disappearance of a vessel that had been moored for some time, hence not at sea in any sense, raises no presumption that the vessel sank or was otherwise lost despite its seaworthiness. Hence it does not shift to the insurer the burden of proving that the vessel was not lost as a result of the perils of the sea. The cases dealing with the mysterious disappearance of a vessel at sea are thus inapplicable here.[7]
 
 
 10
 Even assuming that the vessels had been stolen, the district court was correct in its legal determination that theft of a vessel from a dock is not covered by the "assailing thieves" clause of the policy. The insured cites a recent New York state court decision holding that coverage for "assailing thieves" includes surreptitious theft of a non-commercial yacht with the use of force to gain access.[8] We are of course not bound by this decision but, in any event, the court held, we think in error, that there is no general maritime law on the scope of coverage for assailing thieves, and then applied New York state law to reach its conclusion. Were we simply to apply state law, the applicable jurisprudence would be that of Louisiana, in which it is settled that coverage for assailing thieves extends only to "theft by force or violence of personal property on vessels, not coverage for theft of the vessel itself."[9]
 
 III.
 
 11
 As part of the negotiations over obtaining insurance coverage, Greycas, the mortgagee of the M/V Charlie K, had sought an endorsement from La Reunion for coverage in case of loss due to a breach of warranty by the owner, Opera Boats. Greycas appeals the district court's holding that no breach of warranty endorsement had been issued at the time of the vessels' disappearance.
 
 
 12
 Whether the breach-of-warranty endorsement had issued is a factual determination, involving the weighing of conflicting testimony to determine the intent of the parties, reversible by us only if clearly erroneous.[10] Reviewing the conflicting testimony, the district court concluded, after assessing the credibility of the witnesses, that an agreement about the premium to be paid for the endorsement was a prerequisite to its issuance, and that no such agreement was ever reached. This conclusion finds ample support in the record, and we hold that it was not erroneous.
 
 
 13
 In the alternative, the insured asserts that a representation made during the course of litigation by the claims manager for Continental, one of the brokers who had acted in placing the insurance, that the endorsement had been issued estops La Reunion from arguing to the contrary, since the insured relied on this assertion in stipulating to the dismissal of Continental from the case. The representation on which the insured purports to have relied was made by Continental's claims manager, who stated to counsel for the insured, after the casualty had occurred, that he believed that the endorsement had in fact been issued, and sent him a copy of the endorsement, which had been typed before the casualty but had never been issued.
 
 
 14
 As the district court noted, the insured was aware before trial that La Reunion denied that any such endorsement had ever issued at the time of the vessels' disappearance, and they were free to rejoin Continental as a defendant in the trial of this case. The insured has a separate suit against Continental on this claim, and can show no detriment as a result of the representation save the dismissal of Continental from this suit. The insured therefore suffered no prejudice as a result of the dismissal.
 
 
 15
 For these reasons, the judgment is AFFIRMED.
 
 
 
 [1]
 See S. Felicione & Sons Fish Co. v. Citizens Casualty Co., 430 F.2d 136, 138 (5th Cir.1970), cert. denied, 401 U.S. 939, 91 S.Ct. 936, 28 L.Ed.2d 219 (1971)
 
 
 [2]
 796 F.2d 125 (5th Cir.1986)
 
 
 [3]
 Id. at 127 (citing Reisman v. New Hampshire Fire Ins. Co., 312 F.2d 17, 20 (5th Cir.1963))
 
 
 [4]
 See Insurance Co. of N. Am. v. Lanasa Shrimp Co., 726 F.2d 688, 690-91 (11th Cir.1984) (citing authorities)
 
 
 [5]
 See P.T. Tugs, 796 F.2d at 127
 
 
 [6]
 See, e.g., Lanasa Shrimp Co., 726 F.2d at 691
 
 
 [7]
 Cf. P.T. Tugs, 796 F.2d at 126-27
 
 
 [8]
 See Aqua Craft I, Inc. v. Boston Old Colony Ins. Co., 136 Misc.2d 455, 518 N.Y.S.2d 863 (S. Sup.Ct.N.Y. Cty.1987)
 
 
 [9]
 Felicione, 430 F.2d at 139
 
 
 [10]
 See Fed.R.Civ.Proc. 52(a)