Kenneth JONES

v.

**STATE FARM FIRE & CASUALTY CO.**

**Civil Action No. 06–9151.**

United States District Court, E.D. Louisiana.

Aug. 21, 2009.

---

Paul C. Miniclier, Jeanne Louise O'Boyle, The Law Office of Paul C. Miniclier, New Orleans, LA, for Plaintiff.

Alan A. Zaunbrecher, Randell E. Treadaway, Tricia Bollinger, Zaunbrecher Treadaway, LLC, Metairie, LA, Joseph L. Cowan, II, Haskell, Slaughter, Young & Rediker, LLC, Birmingham, AL, for Defendant.

## ORDER AND REASONS

MARTIN L.C. FELDMAN, District Judge.

Before the Court are the defendant's Motions for Partial Summary Judgment. For the reasons that follow, the motions are GRANTED.

## Background

This is a Hurricane Katrina homeowners insurance dispute. Plaintiffs insured their property located at 4715 Werner Drive in New Orleans, with two insurance policies, both issued by State Farm. State Farm issued a homeowners policy, the subject of this suit, with limits of $87,100 for the dwelling and $8,710 for dwelling extensions under Coverage A, $63,325 for personal property under Coverage B, and loss of use under Coverage C. State Farm also issued a flood insurance policy as a Write Your Own carrier under the National Flood Insurance Program. Plaintiffs' home sustained damage during Hurricane Katrina from wind and almost six feet of flooding.

Plaintiffs notified State Farm of a loss under the policy on August 31, 2005; plaintiffs also spoke with a State Farm representative on September 11, 2005 regarding the flood policy. On October 4, 2005, an adjuster from State Farm adjusted plaintiffs' flood claim over the telephone based on the property location, and issued checks to the plaintiffs representing the flood policy limits of $79,900 for dwelling and $37,100 for personal property damage, less a previous $2,500 advance. Plaintiffs returned to their home in October 2005 and reported the following damage to a State Farm representative regarding their homeowners policy: a broken window, damaged iron gates, missing shingles, ceilings damaged by rain intrusion, siding damage, and damage to a detached garage. Plaintiffs also reported that they had performed renovations to their home prior to the hurricane. A State Farm adjuster inspected the house on November 16, 2005. Pursuant to the adjustment, State Farm issued checks to plaintiffs totaling $6,473.58, including $6,741.81 in dwelling damage less the $1,742 deductible and $1,473.77 in prohibited use damages.

In early January 2006, plaintiffs faxed a request to mediate to the American Arbitration Association. State Farm paid the $525 mediation fee, and mediation was set for February 22, 2006. On February 11, 2006, another adjuster inspected plaintiffs' house and revised State Farm's estimate. The adjuster discussed this estimate with Mrs. Jones, and State Farm issued plaintiffs an additional $8,269.34. Plaintiffs canceled the mediation. The reasons for this cancellation are disputed. Plaintiffs claim they canceled because of difficulty traveling to the mediation and because they were still working with State Farm to resolve their issues. Defendant asserts that the mediation was canceled because the dispute was settled.

After the mediation was canceled, plaintiffs had no contact with State Farm for nearly six months. During this time, plaintiffs retained counsel and hired Steve Hitchcock to perform an inspection of their home. On August 15, 2006, plaintiffs' attorney sent State Farm a supplemental proof of loss with Hitchcock's dwelling damage estimate due to wind, which totaled $35,455.33. Plaintiffs demanded an additional $21,804.18. A State Farm representative called plaintiffs' attorney on September 11, 2006 to discuss the claim, but was told to send a letter. State Farm faxed and mailed a letter rejecting Hitchcock's report as proof of loss, providing forms to submit a supplemental proof of loss, and requesting an opportunity to reinspect the residence. State Farm did not hear back from plaintiffs' counsel. Nine days later, on September 20, 2006, plaintiffs filed suit. Plaintiffs sold their home in a gutted condition in February 2007 for $30,000.

State Farm moves for partial summary judgment as to four issues. First, it asserts that Louisiana's Valued Policy Law should not apply because plaintiff's home

was not rendered a total loss by a covered peril (because flooding caused at least some of the damage). Next, State Farm argues that plaintiffs' bad faith claims should be dismissed because plaintiffs represented they were satisfied with the adjustment of their claim and they have failed to show that State Farm was arbitrary and capricious in not paying the plaintiffs additional money for their claims. State Farm contends that plaintiffs' Coverage A claims should be dismissed because plaintiffs breached their post-loss duties by filing suit before State Farm could reinspect their home after receiving Hitchcock's report; because plaintiffs have already recovered almost $40,000 more than their actual dwelling damages; and because plaintiffs cannot identify any reliable evidence to establish which losses were caused by wind, not flood. Finally, State Farm argues that plaintiffs' claim for contents coverage should be dismissed because they cannot prove that their contents were damaged by wind or wind-driven rain and that plaintiffs' claim for additional living expenses must fail because they cannot satisfy their burden of proving their home was rendered uninhabitable by a covered loss.

Plaintiffs do not oppose State Farm's motion as to Louisiana's Valued Policy Law, but argue that fact issues preclude summary judgment as to their other claims. First, plaintiffs point out that State Farm has failed to present appropriate evidence in support of their motions, as most of the exhibits they attach are not authenticated or attached to a supporting affidavit. As to the merits, plaintiffs assert that summary judgment is inappropriate as for their bad faith claims because State Farm did not initiate a loss adjustment of their claim within thirty days, plaintiffs did not represent that the case was settled, and State Farm acted in bad faith because it did not have probable cause to reject plaintiffs' supplemental proof of loss. As to the Coverage A claims, plaintiffs insist they did not breach any post-loss duties regarding inspection of their home, that State Farm's liability under Coverage A may not be reduced by flood payments made by the NFIP or by funds received by them for the sale of their home, and, they say, they have presented sufficient evidence pertaining to wind damages to create an issue of fact as to all issues.

## I.

Rule 56 of the Federal Rules of Civil Procedure instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this regard, the non-moving party must do more

than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir.1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.* Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987). Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

## II.[1]

### A. Inapplicability of Louisiana's Valued Policy Law

The plaintiffs did not oppose this motion. The Court finds the defendant's motion has merit, and therefore it is granted as unopposed.

### B. Plaintiffs' Bad Faith Claims

■ Under La. R.S. 22:1220, an insurer "owes to his insured a duty of good faith and fair dealing."[2] An insurer who breaches this duty is liable to the insured for damages and penalties. Among the enumerated breaches of this duty of good faith is failing to pay a claim within 60 days following the receipt of satisfactory proof of loss "if that failure is 'arbitrary, capricious, or without probable cause.'" *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297 (5th Cir.2009). La. R.S. 22:658 provides for penalties if the insurer is arbitrary and capricious in failing to pay a claim within 30 days or failing to initiate loss adjustment within 30 days.

To recover penalties under these statutes, "[a] plaintiff has the burden of proving that his insurer (1) received satisfactory proof of loss, (2) failed to pay within the required time, and (3) acted in an arbitrary and capricious manner." *Id.* Acting in a manner that is arbitrary and capricious means "unjustified, without reasonable or probable cause or excuse." *Id.* An insurer does *not* act arbitrarily and capriciously "when it withholds payment based on a genuine (good faith) dispute about the amount of a loss or the applicability of coverage." *Id.*

■ Plaintiffs have failed to establish that State Farm did not have a genuine dispute about their claim. First, plaintiffs assert that State Farm did not timely initiate adjustment of their loss. However, they do not dispute that State Farm was in regular contact with them and plaintiffs did not even return to New Orleans until "mid-October," according to Mrs. Jones. An adjuster contacted the Joneses to set up an inspection in early November, and the plaintiffs had their first payment 30 days after the inspection. The plaintiffs cannot assert State Farm failed to initiate a claim when it had been in regular contact with them and scheduled an inspection soon after plaintiffs made the property available for inspection. Further, even assuming plaintiffs made no statements to the mediators that the case had settled, plaintiffs had no contact with State Farm for six months after the second payment

---

1. Plaintiffs attack the documents attached to defendant's motions, noting that most of the documents are unauthenticated and not supported by an affidavit. State Farm has corrected these defects by submitting declarations in support of their exhibits, attached to their reply memorandum.

2. The Louisiana penalty statutes were renumbered in January 2009. La. R.S. 22:658 is now 22:1892 and La. R.S. 22:1220 is now 22:1973. For consistency with previous cases, this Court will use the old numbering system.

was tendered in February 2006.[3] Finally, plaintiffs assert State Farm had no probable cause for rejecting their supplemental claim submitted in August 2006. However, even plaintiffs' pleadings reflect the fact that State Farm did not reject the claim, but rejected the form of the proof of loss, and requested time to reinspect the property. If State Farm had outright rejected the supplemental claim, an additional inspection would have been unnecessary. Nine days later, plaintiffs filed this lawsuit, rather than permitting the inspection to take place. Plaintiffs have failed to meet their burden of showing that State Farm was arbitrary and capricious in withholding payment, and their bad faith claims must be dismissed.

### C. Plaintiffs' Coverage A Claims

■ As this Court has noted, nothing bars the plaintiffs from collecting under their homeowners policy for wind damage and from collecting under their flood policy for flood damage if they can segregate and prove the two types of damages. *See Deslonde v. Allstate Ins. Co.*, No. 07–4314, 2008 WL 440417, at *3 (E.D.La. Feb. 13, 2008); *see also Wellmeyer v. Allstate Ins. Co.*, No. 06–1585, 2007 WL 1235042, at *2 (E.D.La. April 26, 2007). This general principle, of course, is subject to a limitation: A plaintiff whose property sustains damage from both flood and wind may clearly recover for his segregable wind and flood damages, *except* to the extent that he seeks to recover twice for the same loss. *See id.*; *see also Weiss v. Allstate Ins. Co.*, No. 06–3774, 2007 WL 891869, at *1 (E.D.La. Mar. 21, 2007) (Vance, J.); *Broussard v. State Farm Fire and Casualty Co.*, No. 06–8084, 2007 WL 2264535, at *2–3 (E.D.La. Aug. 2, 2007) (Vance, J.). This is well-established. *See Cole v. Celotex Corp.*, 599 So.2d 1058, 1080 (La.1992)

("As a general rule, the claimant may recover under all available coverages provided there is no double recovery").

■ Insurance contracts against loss are contracts of indemnity, and "[a]n indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy." *Davis v. Allstate Ins. Co.*, No. 07–4572, 2009 WL 122761, at *2 (E.D.La. Jan. 15, 2009). Therefore, "[a]n insured cannot recover an amount greater than the loss," regardless of how many insurance policies he has. *Id.* If an insured has received compensation for the full value of his property, he cannot recharacterize as wind damage those losses for which he has already been compensated by previously attributing them to flood waters. *Id.* (quoting *Johnson v. State Farm Fire & Cas. Co.*, No. 07–1226, 2008 WL 2178059, at *2 (E.D.La. May 19, 2008)). "Plaintiffs are entitled to recover any previously uncompensated losses that are covered by the homeowner's policy and which, when combined with their flood proceeds, *do not exceed the value of their property.*" *Id.* (emphasis added).

The law cited by plaintiffs on this issue is completely off-point. The plaintiffs curiously pontificate on solidary obligors and the collateral source rule, which are patently inapplicable in this case. *See, e.g., Voth v. State Farm Fire & Cas. Ins. Co.*, No. 07–4393, 2009 WL 498625, at *3 (E.D.La. Feb. 19, 2009). Plaintiffs simply cannot recover from their homeowner and flood insurers an amount greater than the value of their home. Here, State Farm has provided several appraisals that estimate the pre-Katrina value of the plaintiffs' home at, at most, $82,000, or the amount to rebuild plaintiffs' entire home at $84,816. Plaintiffs have received over

---

**3.** Mrs. Jones states she cannot remember contacting State Farm during this time.

$93,000 from their flood and homeowners insurers, plus sold their gutted home for another $30,000. Even considering the $3,000 plaintiffs state it cost to gut their home, they have already been paid more than the pre-storm value of their home. Plaintiffs have provided no evidence to rebut State Farm's estimates of the pre-Katrina value of plaintiffs' home. Because plaintiffs cannot recover insurance proceeds that exceed the value of their home, plaintiffs are not entitled to any additional sums under Coverage A. *See Davis,* 2009 WL 122761, at *2.

D. Plaintiffs' Coverage B and C Claims

Plaintiffs' Coverage B and C claims must also be dismissed. As this Court has noted, "the insured is required to prove that personal property was lost or damaged due to a specific risk named in the policy, after which the burden would shift to the insurer to prove an exclusion applied." *Nunez v. Standard Fire Ins. Co.,* No. 07–7457, 2009 WL 799756, at *3 (E.D.La. Mar. 24, 2009) (citing *Hyatt v. State Farm Ins. Co.,* No. 06–8792, 2008 WL 544182, at *3 (E.D.La. Feb. 25, 2008)); *see also Opera Boats, Inc. v. La Reunion Francaise,* 893 F.2d 103, 105 (5th Cir. 1990). In this case, plaintiffs have presented the affidavit of Mrs. Jones, which claims that certain contents that she lost were due to wind and wind-driven rain. However, State Farm correctly observes that Mrs. Jones is basing her estimate on sheer speculation. In her deposition, Mrs. Jones states that she did not know how certain personal items had been damaged and that all of her statements regarding how her contents were damaged were mere guesses.[4]

 To recover additional living expenses under their policy, plaintiffs must show that their house was rendered unin-habitable due to a covered loss. *See Khalimsky v. Liberty Mut. Fire Ins. Co.,* No 07–8959, 2009 WL 982641, at *4 (E.D.La. Apr. 13, 2009). Plaintiffs have submitted Hitchcock's affidavit, in which he asserts, in conclusory fashion, that the Joneses' home was rendered uninhabitable by wind damage. State Farm urges the Court to not consider Hitchcock's last minute affidavit adding this opinion, as it was not timely disclosed in an expert report as provided in the scheduling order. However, even if the Court considers Hitchcock's affidavit, it is not sufficient to create an issue of fact as to whether wind rendered the home uninhabitable. Plaintiffs must present "specific facts showing that there is a genuine issue for trial." *Barney v. Exxon Mobil Oil Corp.,* No. 04–2715, 2006 WL 1984587, at *3 (E.D.La. June 16, 2006) (citing *Lechuga v. S. Pac. Transp. Co.,* 949 F.2d 790, 798 (5th Cir.1992)). "Conclusory statements ... are insufficient to raise a genuine issue to defeat summary judgment." *Id.; see also Denley v. Hartford Ins. Co. of the Midwest,* No. 07–4015, 2008 WL 2951926, at *4 (E.D.La. July 29, 2008). Plaintiffs provide no support for their Coverage C claims, other than the conclusory statement of Hitchcock in his affidavit.

Accordingly,

IT IS ORDERED: that the defendant's motions for partial summary judgment are GRANTED.

---

4. Mrs. Jones stated "Everything—all of this is a guess because I wasn't there."