PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1903
_____

CHARTIS PROPERTY CASUALTY COMPANY

v.

JOHN INGANAMORT; JOAN INGANAMORT,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-12-cv-4075)
District Judge:  Hon. William H. Walls
_____

Argued
January 15, 2020

Before:   JORDAN, GREENAWAY, JR., and KRAUSE,
*Circuit Judges.*

(Filed: March 24, 2020)
_____

James Beagle     [ARGUED]
12 South East 7th Street – Ste. 704
Fort Lauderdale, FL   33301
        *Counsel for Appellants*

Neil V. Mody     [ARGUED]
Thomas M. Wester
Connell Foley
56 Livingston Avenue
Roseland, NJ   07068
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Poems and books get written, songs sung, and movies made about sinking ships.[1]  But there's nothing stirring or awe-inspiring about a yacht that partially sinks in calm waters while docked.  That, sadly, is the event at the center of this case.  In the insurance dispute that followed, the District Court granted summary judgment in favor of the insurance company because the yacht's owners, Mr. and Mrs. Inganamort, did not carry their burden of proving that the loss was a matter of chance –

---

[1] *See, e.g.*, Henry Wadsworth Longfellow, *The Wreck of the Hesperus*, *in* Ballads and Other Poems (John Owen ed., 1842); Gordon Lightfoot, *The Wreck of the Edmund Fitzgerald*, *on* Summertime Dream (Reprise Records 1976); Sebastian Junger, *The Perfect Storm* (1997); *The Perfect Storm* (Warner Bros. 2000).

"fortuitous," in the argot of insurance – which is a requirement for coverage under the all-risk insurance policy the Inganamorts had.  Because we agree that an insured bears the burden of proving fortuity, and that the Inganamorts did not meet that burden here, we will affirm.

## I.    BACKGROUND

John and Joan Inganamort left their 65-foot fishing vessel, *Three Times a Lady*, docked behind their part-time residence in Boca Raton, Florida.  In September 2011, when they were at their home in New Jersey, the Inganamorts received the sad news that *Three Times a Lady* had come to the end of her rainbow,[2] sinking enough to sustain serious damage. They reported the loss to their insurance company, Chartis Property Casualty Company, with whom they had an all-risk policy.[3]  Chartis sent a claims specialist to conduct a preliminary survey of the vessel on October 24, 2011.  The specialist reported three inches of standing water in the starboard forward cabin bilge and multiple potential sources of

---

[2] Hat tip to Lionel Richie, The Commodores, *Three Times a Lady*, *on* Natural High (Motown Records 1978).

[3] An all-risk insurance policy is one "that covers every kind of insurable loss except what is specifically excluded." *Insurance*, Black's Law Dictionary (11th ed. 2019).  In marine insurance, all-risk policies are "construed as covering all losses that are 'fortuitous.'" *Goodman v. Fireman's Fund Ins. Co.*, 600 F.2d 1040, 1042 (4th Cir. 1979); *see also Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293, 307 (2d Cir. 1987) ("All risk coverage covers all losses which are fortuitous ….").

3

water ingress, including a hole in the hull the size of a screw. He also found that the electrical breakers were "severely rust-stained and blackened from an electrical failure[,]" and subsequent testing "revealed obvious water intrusion[.]" (App. at 171.) The final review of the vessel, completed June 28, 2012, confirmed the claim specialist's initial findings and also identified that the ship's battery charger was not working, and without a source of power, the ship's bilge pumps had ceased functioning. Despite that state of disrepair, the Inganamorts pressed Chartis for payment on their insurance policy.

To settle the question of coverage, Chartis filed a complaint in the United States District Court for the District of New Jersey, setting forth three counts: a plea for declaratory judgment that Chartis was not liable for the damage to *Three Times a Lady*, a claim that the Inganamorts were liable for material misrepresentations and rescission of contract, and a reservation of rights to assert additional grounds for declaratory judgment, misrepresentation and rescission. No one disputes that an insurance policy was in place at the time of the loss, so the question was, and remains, whether the vessel's partial submersion was a loss of the kind covered by an all-risk policy, specifically, whether it was a fortuitous loss.

After prolonged discovery, the parties filed cross-motions for summary judgment. The District Court's Local Rule 56.1 requires parties to file a statement of undisputed facts with a motion for summary judgment, and it also requires parties responding to a motion for summary judgment to respond to the moving party's Rule 56.1 Statement. In the absence of a response, the local rules declare that the facts in the movant's Rule 56.1 Statement will be deemed undisputed. Chartis sought summary judgment only on its declaratory

4

judgment claim, while the Inganamorts did not specify which of the counts in Chartis's complaint they thought warranted summary judgment in their favor. They neither filed a statement of undisputed facts nor opposed Chartis's statement of undisputed facts. The District Court thus treated Chartis's statement of facts as being undisputed. In further consequence, the Court granted summary judgment for Chartis because the Inganamorts "ha[d] no evidence to demonstrate a fortuitous loss[.]" (App. at 19.)

The Inganamorts have timely appealed.

## II.    DISCUSSION[4]

We address a simple question of federal maritime law: Who bears the burden of proving a fortuitous loss? Every circuit to decide the issue has determined that the insured bears that burden, and we agree. The Inganamorts did not carry it, so we will affirm the decision of the District Court.[5]

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1333. We have jurisdiction under 28 U.S.C. § 1291. We review a motion for summary judgment *de novo*, applying the same standard the district court applied. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). Under that standard, we will affirm a grant of summary judgment only if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*

[5] Chartis also argued in its Answering Brief that, if we were to decide that the Inganamorts did carry their burden of proving the loss was fortuitous, we should still affirm because several exceptions to coverage apply. Since we conclude that

5

As already noted, when *Three Times a Lady* sank, it was covered by an all-risk insurance policy, which protects against fortuitous losses, meaning losses that are unexplainable or "dependent on chance." *Intermetal Mexicana, S.A. v. Ins. Co. of N. Am.*, 866 F.2d 71, 77 (3d Cir. 1989) (citation omitted). All-risk policies "arose for the very purpose of protecting the insured in those cases where difficulties of logical explanation or some mystery surround the (loss of or damage to) property." *Morrison Grain Co.*, *Inc. v. Utica Mut. Ins. Co.*, 632 F.2d 424, 430 (5th Cir. 1980) (citation omitted). But just because an insured need not "show the precise cause of loss to demonstrate fortuity[,]" *id.* at 430, that does not mean an all-risk policy covers all damage.[6] "'All-risk' is not synonymous with 'all

the Inganamorts did not carry the burden of proving fortuitous loss, we need not address those exceptions.

[6] The Inganamorts have misread *Morrison Grain* to mean that an insured need only show that a loss occurred while the policy was in effect. But that case did not dispense with the insured's burden to establish fortuity; rather, it concluded the insured had impliedly met that burden by demonstrating the ship's cargo was in "good condition when the policy attached and in damaged condition when unloaded from the vessel," *id.* at 432, leaving "no indication" that the loss was caused by "anything but fortuitous circumstances." *Id.* at 430. Likewise, where cargo has simply disappeared without explanation from ships' hulls, courts have sometimes observed that all the "insured need show is that the loss occurred." *See, e.g.*, *Atlantic Lines Ltd. v. American Motorists Ins. Co.*, 547 F.2d 11, 13 (2d Cir. 1976) (citing *Balogh v. Jewelers Mut. Ins. Co.*, 167 F. Supp. 763, 769 (S.D. Fla. 1958), aff'd, 272 F.2d 889

6

loss.'" *Intermetal Mexicana*, 866 F.2d at 75. Despite the Inganamorts' argument, an insured must do more than prove that there was a loss. To enjoy coverage, the insured must prove that the loss was indeed fortuitous.

The First, Second, Fifth, and Eleventh Circuits have all held that, for marine insurance policies, the insured bears the burden of proving that the loss was fortuitous. *See Banco Nacional de Nicaragua v. Argonaut Ins. Co.*, 681 F.2d 1337, 1340 (11th Cir. 1982) ("The [insured] in a suit under an all-risks insurance policy must show a relevant loss in order to invoke the policy, and proof that the loss occurred within the policy period is part and parcel of that showing of a loss."); *Morrison Grain*, 632 F.2d at 429 ("[T]he burden of proof generally is upon the insured to show that a loss arose from a covered peril."); *Atlantic Lines Ltd. V. American Motorists Ins. Co.*, 547 F.2d 11, 12 (2d Cir. 1976) ("[F]or recovery under an all risks policy, an insured need demonstrate only that a fortuitous loss has occurred."); *Boston Ins. Co. v. Dehydrating Process Co.*, 204 F.2d 441, 443 (1st Cir. 1953) ("Undoubtedly … the owner of the barge and its cargo has the burden of establishing … that its loss was caused by a risk insured against[.]"). In the non-maritime context, we too have held that an insured with an all-risk policy bears the burden of proving that a loss was fortuitous and therefore covered by the policy. *See Intermetal Mexicana*, 866 F.2d at 76-77 (describing what the insurer showed to prove the event was fortuitous). We now

_____

(5th Cir. 1959)). Again, however, where the record reflected the cargo was previously present, those observations merely reflect that it is unlikely "the average insured would not equate a mysterious disappearance with a fortuitous loss" in those circumstances. *Id.*

7

join our sister circuits in saying that, under a maritime all-risk policy, the insured bears the burden of proving that a loss was fortuitous.

That burden is not heavy, but it is more than negligible. *See id.* at 77 ("[T]he 'burden of demonstrating fortuity is not a particularly onerous one[.]'" (quoting *Morrison Grain*, 632 F.2d at 430)); *see also PECO Energy Co. v. Boden*, 64 F.3d 852, 858 (3d Cir. 1995) ("Proving fortuity is not particularly difficult."). Since the nature of a fortuitous loss is that it may not be easily explained, the insured need not point to an exact cause of the loss. *In re Balfour*, 85 F.3d at 77 ("The insured … need not prove the cause of the loss."); *Morrison Grain*, 632 F.2d at 431 ("[C]ourts which have considered the question have rejected the notion that the insured must show the precise cause of loss to demonstrate fortuity."). When a vessel sinks in calm waters, for example, an insured may create a presumption of fortuitous loss by establishing that the vessel was seaworthy before sinking. *See Ins. Co. of N. Am. v. Lanasa Shrimp Co.*, 726 F.2d 688, 690 (11th Cir. 1984); *Reisman v. New Hampshire Fire Ins. Co.*, 312 F.2d 17, 20 (5th Cir. 1963); *Boston Ins. Co.*, 204 F.2d at 443. There must, in short, be some showing that the loss occurred by chance.

Here, the Inganamorts' primary argument was that they were not required to prove fortuity, which, as the weight of authority just cited proves, is incorrect as a matter of law.[7]

---

[7] Counsel for the Inganamorts eventually admitted as much at oral argument. *See* Oral Argument at 1:26-1:44, https://www2.ca3.uscourts.gov/oralargument/audio/19-1903ChartisPropertyCasualtyCov.Inganamortetal.mp3.

8

Secondarily, they attempted to show fortuity by asserting that the loss was due to heavy rainfall. But Chartis's statement of undisputed facts notes that there is "no data to support [the] theory that [*Three Times a Lady*] was subject to 'heavy rains' on any date." (App. at 172.) Even if we were tempted to look beyond the statement of undisputed facts, the evidence elsewhere in the record does not support the assertion that the loss was due to heavy rainfall. Not even the Inganamorts' own expert could say with assurance that there was heavy rainfall in the area at the relevant time.[8] Finally, while the Inganamorts had initially claimed that the ship was seaworthy prior to September 15th, they made no effort to present renewed evidence of seaworthiness after the loss was backdated to September 5th or 6th; nor did they press this argument before the District Court or on appeal. Because there is nothing in the record to support the argument that the loss was due to heavy rainfall and there is no other indication of fortuity, the Inganamorts did not carry their burden of proving a fortuitous loss.[9]

---

[8] The expert said that "[i]t had been reported in September [2011] that two (2) or possibl[y] three (3 coastal) events of heavy rains, lightning, and heavy thunderstorms did drench South Florida with 5" to up to 15" of rain." (App. at 217.) But he later backpedaled, saying he had looked at rainfall for September 15th, the day the loss was reported, not September 5th or 6th, the revised date of loss, and that, "you know, weather records are extremely difficult to determine the exact flow …[.]" (App. at 204.)

[9] At oral argument, there was some discussion about whether a loss resulting from negligent behavior, or negligently failing to maintain a vessel, would qualify as a

fortuitous loss. *See* Oral Argument at 20:25-27:32 https://www2.ca3.uscourts.gov/oralargument/audio/19-1903ChartisPropertyCasualtyCov.Inganamortetal.mp3.

Losses that result from negligent behavior can be considered fortuitous, but losses caused by wear and tear typically cannot. *See Goodman*, 600 F.2d at 1042 ("A loss is not considered fortuitous if it results … from ordinary wear and tear …. However, loss due to the negligence of the insured or his agents has generally been held to be fortuitous and, absent express exclusion, is covered by an all risks policy."); *see also Youell v. Exxon Corp.*, 48 F.3d 105, 110 (2d Cir. 1995) ("The fortuity rule excludes from coverage losses that arise from … wear and tear …; losses that arise from … the insured's negligence[ ] are covered." (*vacated on other grounds*, 516 U.S. 801 (1995)). We question the suggestion that a loss caused by negligently allowing a vessel to fall into disrepair would be considered fortuitous, as it would seem to create perverse incentives if damage resulting from failure to maintain a vessel were considered as such. Indeed, this would effectively convert all-risk insurance policies into general maintenance contracts or "warrant[ies] of soundness," leaving the insurer liable for all maintenance costs except for those expressly excluded. *Mellon v. Federal Ins. Co.*, 14 F.2d 997, 1002 (S.D.N.Y. 1926). For that reason, courts that have taken that tack and expanded fortuity to include losses caused by the premature failure of a ship's mechanical components have been criticized. *See* Michael I. Goldman, *The Fortuity Rule of Federal Maritime Law: The Scope of "All Risk" Coverage Under Policies of Marine Insurance and the New Decision of the Eleventh Circuit Court of Appeals*, 46 J. Maritime L. & Com. 171 (2015). Expanding fortuity to include losses caused by negligently allowing a vessel to fall into disrepair would appear

10

## III.    CONCLUSION

The Inganamorts having failed to carry their burden of proof, we will affirm the District Court's grant of summary judgment against them.

---

equally ill-advised.  But because neither party raised the issue in briefing nor addressed it more than in passing at argument, we do not need to decide the question.